# CARL A. BRATNOBER AND OTHERS v. ROWELL, INC.

123 N. W. (2d) 916.

October 11, 1963—No. 38,751.

*Rudolph E. Low,* for appellants.
*Harold Jordan* and *Doherty, Rumble & Butler,* for respondent.

OTIS, JUSTICE.

This is an action to recover from defendant, Rowell, Inc., (hereafter called Rowell) the sum of $18,500 paid by plaintiffs Bratnober to third parties in settlement of various claims against Independent Silo Company (hereafter called Silo), a concern purchased by Rowell from the Bratnobers.

The trial court made findings in favor of Rowell, and Bratnobers appeal from an order denying their motion for a new trial or amended findings.

The Bratnobers were for many years the principal owners of Silo, which for a long time was managed by Ford Rowell and by his father before him. Silo filed with the Minnesota secretary of state a resolution for voluntary dissolution on February 2, 1953. On January 30, 1953, the contract here in question had been entered between Silo and Rowell, which was a corporation formed and owned by Ford Rowell. The effect of the contract was to sell to defendant Rowell all of Silo's assets, a part of the consideration being Rowell's assumption of all Silo's liabilities and an agreement to hold Silo harmless against all tort claims up to $75,000 as well as those over $90,000, there being at that time 550 such claims already asserted. In other words, Rowell was to pay the first $75,000, Silo the next $15,000, and Rowell everything above that figure.[1] Having received the proceeds

---

[1] Section IV of the contract provides in part as follows: "That paragraph (b) of Section II hereinbefore written specifies a total amount allowed to the purchaser for the purposes therein expressed; that it is understood between the parties that there are a large number of contingent claims against the vendor for silos needing repairs or replacement, wherein the claimants are asserting a breach of warranty of fitness; that there are now

of the sale of the corporate assets, Bratnobers allege and Rowell admits that Bratnobers became personally liable for any judgments thereafter entered against Silo if for any reason they were not collectible against Rowell.

Ultimately over 2,000 claims were made against Silo resulting from the use of defective tile in construction. In excess of $100,000 was paid in settlement.

The five actions which gave rise to this litigation were brought on August 29, 1955, in the Illinois Federal District Court against Silo, the complaints alleging a breach of warranty in the erection of grain bins. Illinois counsel was retained for Silo, but in a letter to Silo's Minnesota attorney, dated June 5, 1957, he stated:

"* * * [W]e firmly believe that there is no valid defense to assert at the trial here * * *. We firmly believe from the discovery had in the case that the defense here would be no more than a sham."

Counsel on the date set for trial, June 17, 1957, secured the consent of the Illinois court to withdraw. Nevertheless, defendant's answer remained on file and the cases remained at issue and were con-

---

some five hundred fifty (550) claims now on file with the vendor, and the parties believe that there will be more claims materializing during the next four years; that the purchaser does hereby agree to hold the vendor harmless against all of said contingent claims now asserted, and those asserted hereafter, for the total sum of $75,000.00, providing, however, that should the cost of settling all of said contingent claims exceed the sum of $75,000.00, that the vendor will reimburse the purchaser for such excess amount providing the same does not exceed the sum of $15,000.00 and further providing that the same does not extend beyond a four year period from the date hereof; and it is agreed that any such limited amount over the sum of $75,000.00 in settling the said contingent claims that such amount may be deducted from the amount to become due to the vendor on the fourth note due it on February 1, 1958, described in paragraph (c) of Section II herebefore written. It is further agreed between the parties that the purchaser shall defend all suits, actions or causes of action, claims and demands against the vendor that may arise by reason of claims asserted against the vendor in the name of the vendor; that the purchaser shall retain its own lawyers at its own expense, and shall pay all judgments hereafter obtained or entered against the vendor; * * *."

tinued for hearing until June 25 and 26, 1957. On the latter dates there was no appearance for Silo, and the court granted various motions of the five plaintiffs to amend their complaints, increasing the ad damnum clauses of three of them by some $21,300 over the original prayers for $64,858.06 and adding as an element of damages the cost of attempted repairs, the loss of storage, and the expense of dismantling. Thereupon the cases were tried to verdict, and judgments totaling $77,260.69 were entered in Illinois and filed in Minnesota in November 1957.

The Bratnobers thereafter brought a declaratory judgment action in the Minnesota Federal District Court to prevent the enforcement of the Illinois judgments. In response to a motion for summary judgment the Minnesota Federal Court held on December 31, 1958,[2] that none of the grounds for attacking the Illinois judgments was valid except the claim that the Illinois creditors practiced "fraud and deception on the court and on the plaintiffs herein." In view of the fact question thus presented the motion was denied. The Federal court concluded its memorandum opinion as follows:

"In the Illinois case, as I view it, there was no default. The case was at issue by service and filing of appropriate process and pleadings. All parties were represented by counsel up to the time that counsel for the defendant 'walked out' of the case. The answer was not withdrawn.

"A prior judgment will not be set aside where the complaining parties are themselves at fault and were not deprived of their opportunity to defend on the merits. 'The imperative condition' of equitable intervention is that the moving parties must make it clearly appear that they have a good defense to the action, and by fraud, mistake, or like equitable basis, they were deprived of their day in court, and this only in the absence of fault or neglect on the part of movants, for public policy requires 'that there shall be an end to litigation.' "

It is significant that in those proceedings the Illinois creditors counterclaimed against the Bratnobers, seeking recovery against them

---

[2]Bratnober v. Illinois Farm Supply Co. (D. Minn.) 169 F. Supp. 85.

personally. However, Rowell asserts that the fact the enforcement of the judgments was held in abeyance when the settlements were effected is decisive against the Bratnobers' position.

In January 1959 the Bratnobers conferred at some length with Ford Rowell in an unsuccessful attempt to convince him that the Illinois judgments should be settled for approximately $25,000. Mr. Rowell gave his version of the interviews as follows:

"* * * I said, no, I didn't think so, $25,000.00 was an awful lot of money, particularly when it seemed to be not only my opinion but Mr. Matteson's opinion too; we had a real good case from what Judge Donovan said, so I said no, I didn't think we should settle.

\* \* \* \* \*

"To my best recollection when the sum of $25,000.00 was mentioned, I felt that in settling for $25,000.00 and taking that out of the capital—the capital structure of the company it certainly would seriously hurt us, I mean it wouldn't break us, but it would hurt us pretty bad and I felt that the chances were that then if it went to suit and we would lose that the matter would probably be settled for $45,000.00 and I was willing to gamble on the difference between the $25,000.00 and 45,000 because I would be just about as badly hurt by losing $25,000.00 as I would be to lose the whole thing, the whole ball of wax, and it seemed that having a good chance in court that it was more desirable for me to go clear through it and see if I couldn't prevail in this court action, or Mr. Bratnober would prevail.

\* \* \* \* \*

"* * * if you take $25,000.00 out of the working capital of my company it would certainly seriously affect the operation of the company. I felt that according to the way I felt about it, * * *.

\* \* \* \* \*

"* * * I stood a better chance, if you take $25,000.00 out of my working capital it will cripple me to a great extent, I would be just as well off to gamble on the $45,000.00."

On January 12, 1959, without Rowell's knowledge or consent, Bratnobers settled all of the judgments, amounting to $77,260.99 plus

interest, for the sum of $18,500. This action was brought to secure reimbursement from Rowell.

■ It is the contention of plaintiffs that there was no defense to the enforcement of the Illinois judgments; that the settlement of $18,500 was a provident one for both parties; and that plaintiffs had a right to protect themselves from personal liability because Rowell was financially incapable of satisfying the judgment.

Rowell on the other hand asserts that Silo's agreement to sell was one for indemnity which prevented recovery until Silo sustained a loss; that the probability of a loss was speculative; and that Bratnobers have deprived Rowell of the opportunity to assert valid defenses to the enforcement of the judgments.

Rowell claims the Illinois creditors practiced extrinsic fraud on the trial court and on the attorneys for Silo by amending their complaints and their prayers without notice to counsel. We do not agree. No authority is cited in support of Rowell's contention. It is difficult to understand how the trial court could be defrauded by entertaining plaintiffs' motions in cases which were not in default although uncontested, where the court itself had given the defendant's counsel leave to withdraw. Except in a default the court may always permit the pleadings to be amended and no case, rule, or statute has been called to our attention which requires notice to be given an attorney who has withdrawn without a substitution. We find no impropriety, let alone fraud, in failing to notify Silo's former counsel of subsequent proceedings. As we view the matter, there was no defense whatever to the enforcement of the Illinois judgments. Hence the only question is whether Bratnobers had a right to compromise the judgments without Rowell's consent.

■ Both parties have argued extensively the question of whether the January 30, 1953, agreement is one of suretyship or indemnity. However, we are of the opinion that it is unnecessary to decide that issue. On broad principles of equity it would be manifestly unjust to require Bratnobers to wait until the Illinois creditors had levied on their assets before looking to Rowell for reimbursement if (1) it was obvious the judgments were valid, (2) Rowell was not in a position

to pay the claims, and (3) Bratnobers were patently liable if the judgments could not otherwise be satisfied.

The second contingency is the only remaining issue for consideration. While the evidence is not as lucid and persuasive as we should like, we are of the opinion that the record compels a finding that Bratnobers had a right to assume Rowell was incapable of satisfying the judgments which aggregated over $77,000 in January 1959. The company statements do not show a liquid net worth sufficient to pay claims in such an amount, and it can be inferred from Ford Rowell's own testimony that it was more than the company could raise. Under such circumstances there appears to have been ample justification for urging a settlement on Rowell, and its failure to explore this possibility put Bratnobers in serious jeopardy of being saddled with judgments of $77,000 for which there was no apparent recourse, once the stay of execution was lifted.

While they are obviously not precisely in point, we believe the principles governing the right of an insured to settle claims without the consent of his liability carrier are by analogy appropriate for consideration.

A leading case is Traders & General Ins. Co. v. Rudco Oil & Gas Co. (10 Cir.) 129 F. (2d) 621, 142 A. L. R. 799, where the insured, covered by a liability policy with limits of $5,000 and $10,000, was faced with claims for damages in the sum of $63,000. The policyholder negotiated a settlement for $17,000, payment of which was to be shared with a joint tortfeasor, and demanded that the liability carrier contribute $4,500 to the settlement, which demand was refused. In a subsequent action by the insured against the liability carrier, the company invoked the policy provisions prohibiting the insured from settling without the company's consent. The Federal court held that the insurer had no right to act arbitrarily but had a duty to exercise (129 F. [2d] 627, 142 A. L. R. 806) "diligence, intelligence, good faith, honest and conscientious fidelity to the common interest of the parties." The court went on to say that the same rule should apply where the insured has obtained a provident settlement as in the cases where settlement has been refused and a judgment in excess of the

proposed settlement has been awarded against the insured as a result of litigation. The court adopted the rule that the insurance company must act in good faith and deal fairly with the assured[3] before it can effectively invoke the provisions prohibiting settlements negotiated by the insured. The court concluded by holding that where the injuries are serious, the element of damages gross, the insured convinced of its liability, and the exposure of the insured greatly exceeds that of the liability carrier, the insurance company is liable to the insured for a compromise settlement which is admittedly just and reasonable.

The rule enunciated in the Rudco case was followed in Evans v. Continental Cas. Co. 40 Wash. (2d) 614, 630, 245 P. (2d) 470, 480, which stated that "a reasonable settlement made in good faith has many of the attributes of a judgment," citing St. Louis Dressed Beef Co. v. Maryland Cas. Co. 201 U. S. 173, 26 S. Ct. 400, 50 L. ed. 712.[4]

Under the circumstances of this case we do not believe that Bratnobers were volunteers,[5] but, on the contrary, having made a "Prudent settlement" under the compulsion of a lawsuit in which the liability was certain, Rowell's capacity to pay doubtful, and Bratnobers' exposure great, they were entitled to reimbursement and it was error to hold otherwise.

---

[3]The Minnesota rule is stated in Larson v. Anchor Cas. Co. 249 Minn. 339, 355, 82 N. W. (2d) 376, 386: "* * * It is clear that Minnesota has adopted the rule that a liability insurer, having assumed control of the right of settlement of claims against the insured, may become liable in excess of its undertaking under the policy provisions if it fails to exercise 'good faith' in considering offers to compromise the claim for an amount within the policy limits.

"We are clearly committed to the 'good faith' test and that there must be bad faith with resulting injury to the insured before there can be a cause of action."

See, also, Boerger v. American General Ins. Co. 257 Minn. 72, 100 N. W. (2d) 133.

[4]See, also, Keeton, *Liability Insurance and Responsibility for Settlement,* 67 Harv. L. Rev. 1136.

[5]See, Pacific Tel. & Tel. Co. v. Pacific Gas & Elec. Co. 170 Cal. App. (2d) 387, 392, 338 P. (2d) 984, 987.

■ Defendant Rowell has interposed a counterclaim for $5,000, alleging that the Bratnobers have only paid $10,000 of the $15,000 for which they were liable after the Silo payments for damages reached the sum of $75,000. Bratnobers counter with an assertion that there was an accord and satisfaction by the execution of an agreement in 1956 which inferentially disposed of all unresolved matters between the parties. The trial court allowed the counterclaim and we affirm its decision in this regard. The 1956 contract makes no reference to the balance of the $15,000, and in the absence of some indication that the agreement was intended to dispose of all credits and debits of whatever kind and from whatever source due or owed by one party to the other, we are unable to find an implied accord and satisfaction which would bar Rowell's rights under the 1953 contract.

Reversed in part and affirmed in part.