551 F.2d 221
 Paul F. SARGENT, Plaintiff-Appellee,
v.
Roger T. JOHNSON, Architect, Defendant-Appellee.
AXEL H. OHMAN, INC., a Minnesota Corporation, Defendant and
Third-Party Plaintiff-Appellee,
v.
PRESTON HAGLIN CO., a Minnesota Corporation, Third-Party
Defendant-Appellant and Fourth-Party Plaintiff-Appellee.
Paul F. SARGENT, Intervenor,
v.
LIBERTY MUTUAL INSURANCE COMPANY, Fourth-Party Defendant-Appellant.
 Nos. 76-1304, 76-1327 and 76-1328.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Oct. 5, 1976.
Decided March 16, 1977.
 
 Douglas Dale Reid, Jr., Minneapolis, Minn., for appellants.
 Robert G. Share, Minneapolis, Minn., for appellee, Preston Haglin.
 Clint J. Grose, Minneapolis, Minn., for appellee, Sargent.
 John R. deLambert, Minneapolis, Minn., for third party defendant, Preston Haglin Co., insured of Liberty Mut. Ins. Co.
 Mary Jeanne Coyne, Minneapolis, Minn., for appellee, Roger T. Johnson.
 William J. George and David F. Fitzgerald, Minneapolis, Minn., made appearances of appellees, Axel H. Ohman, Inc.
 Before HEANEY, BRIGHT, and ROSS, Circuit Judges.
 BRIGHT, Circuit Judge.
 
 
 1
 Liberty Mutual Insurance Company (Liberty) appeals from rulings and judgments of the district court (Judge Miles W. Lord) which impose upon Liberty an obligation to pay Paul F. Sargent (Sargent), a plaintiff in a bodily injury suit, the sum of $794,950.52, plus interest and costs. Chief among the challenged district court actions are: (1) a judgment entered pursuant to a settlement arranged by Liberty's insured, Preston Haglin Company (Haglin), and certain other parties to the Sargent lawsuit, without Liberty's participation, and (2) a judgment entered in a fourth-party suit brought to determine the nature and extent of insurance coverage owed to Haglin by Liberty.
 
 
 2
 For reasons set forth in this opinion, we reverse the crucial rulings and judgments of the district court, insofar as they impose liability on Liberty. This case, resting upon the jurisdictional basis of diversity of citizenship, is controlled by Minnesota law.
 
 
 3
 Sargent, while employed on a construction project in Minneapolis, Minnesota, sustained severe and permanently disabling injuries on July 14, 1969, when he fell from an upper floor into the basement of the building under construction. No person witnessed the incident. Sargent brought an action to recover for his injuries against a subcontractor on the job, Axel H. Ohman, Inc. (Ohman), and Roger T. Johnson (Johnson), architect on the project, alleging that the subcontractor's employees removed coverings from an elevator shaft in the building and that the architect had been negligent in enforcing safety standards in building construction. These defendants joined Haglin, general contractor (Sargent's employer), as a third-party defendant seeking contribution or indemnity against Haglin for Haglin's failure to provide a safe place of work for its employee. Defendants, subcontractor Ohman and architect Johnson, could not join employer Haglin as a defendant to Sargent's suit because under Minnesota law an employer covered by the workmen's compensation statute is immune from suit by an employee injured on the job. Minn.Stat.Ann. §§ 176.021, 176.031. Defendants Johnson and Ohman and third-party defendant Haglin asserted various cross-claims against one another for contribution or indemnity.
 
 
 4
 The district court directed a verdict against Johnson, Ohman, and Haglin, and in favor of Paul Sargent on the issues of negligence and causation and left to the jury the assessment of damages and apportionment of fault among the defendants Johnson and Ohman and third-party defendant Haglin. The jury entered an award of $1,600,000 in favor of Sargent against defendants Ohman and Johnson, and apportioned the fault as follows:
 
 Ohman, 55 percent
 Johnson, 15 percent
 Haglin, 30 percent
 
 5
 Thereafter, the district court made additional findings of fact and conclusions of law. In dealing with the cross-claims among the defendants and third-party defendant, Judge Lord denied recovery of contribution or indemnity of any kind between Ohman and Haglin, but awarded architect Johnson indemnity equally against the general contractor, Haglin, and the subcontractor, Ohman, and determined that Ohman, being 55 percent at fault, was responsible for 11/14ths of the judgment, and that Johnson, being 15 percent at fault, was responsible for 3/14ths of the judgment, subject to Johnson's right of indemnity. On October 15, 1973, a judgment was entered on the special verdict and special findings.
 
 
 6
 All parties made post-trial motions and the district court stayed any execution upon that judgment. The district court did not rule on the post-trial motions, thus preventing an appeal from a final judgment by any of the aggrieved parties. Instead, there followed a series of unusual actions. The district court allowed Haglin to dismiss the defense counsel provided by Liberty, as Haglin's insurer.[1] Ohman, Haglin, and Sargent, through their respective attorneys, collaborated to enter into a settlement agreement under which Ohman paid $900,000 to Sargent and which provided that Sargent would receive the balance of the judgment award ($700,000, plus accruing interest) from proceeds of Haglin's insurance policy with Liberty. The settlement agreement also purported to relieve Johnson of any liability to Sargent, although Johnson did not join in the execution of that settlement agreement. On November 14, 1974, the district court modified the October 15, 1973, judgment to reflect this settlement agreement.[2]
 
 
 7
 Subsequently, through a fourth-party action brought against Liberty by Haglin and Sargent, the latter as an intervenor, the district court determined that Liberty was liable under its insurance policies to pay Sargent the balance of the judgment award. Liberty brings this appeal to contest the validity of the award and urges as error various rulings made in the proceedings by the district court.
 
 
 8
 We hold that Haglin, by entering into a settlement agreement with Sargent and Ohman without the concurrence or consent of its insurance carrier, breached the cooperation clauses of the insurance policies. We hold that neither the settlement nor the district court's approval of that settlement is binding upon Liberty.
 
 
 9
 We review the history of this litigation in greater detail in order to form an appropriate framework for our discussion.
 
 I.
 
 10
 Sargent's injuries resulted from falling onto steel reinforcement rods located in the basement of the structure. His spinal cord was severed, causing paralysis, and he also sustained head injuries. As we have noted, the trial court heard no testimony from anyone who had seen Sargent fall, nor could any witness testify as to Sargent's position or actions immediately prior to his fall. Nevertheless, the district court directed a verdict on liability issues, finding that Johnson, Ohman, and Haglin all were negligent and that Sargent neither assumed the risk nor committed any act of negligence which contributed to his injury. The court also permitted an economist, Edward Foster, to testify to the extent of Sargent's loss of earning capacity in light of assumed percentages of future inflation.
 
 
 11
 Thus, Sargent's verdict rested on somewhat tenuous grounds. The trial court had removed the liability issues from the jury's consideration under circumstances where the facts, especially in the absence of eyewitness testimony, might have given rise to different inferences. This court has stated: "It is an exceptional case wherein the party on whom rests the burden of proof is entitled to a directed verdict in his behalf." Powers v. Continental Casualty Company, 301 F.2d 386, 388 (8th Cir. 1962). See also Juhnke v. Eig Corporation, 444 F.2d 1323 (9th Cir. 1971); 5A, J. Moore, Federal Practice § 50.02(1) at 2318-19. Moreover, the testimony supporting damages given by witness Foster which took future inflation into account in computing future wages, foreman's bonus, and vacation pay, was of questionable admissibility under Minnesota law. See Johnson v. Serra, 521 F.2d 1289 (8th Cir. 1975).[3]
 
 
 12
 Haglin's post-trial motions (and similar motions of defendants) asserted that the trial court had erred in directing a verdict on liability, in failing to submit the issues of negligence and contributory negligence or assumption of risk to the jury, and in the admitting of opinion evidence from witness Foster. Haglin further asserted that its obligation to indemnify Johnson, if any, would ultimately fall on Ohman by reason of express agreements of indemnity in Ohman's subcontract with Haglin. In that subcontract Ohman had agreed (1) to assume the same indemnity responsibilities and obligations to Haglin as Haglin assumed to the owner for the portion of the work governed by the contract (Haglin had agreed to indemnify and hold harmless the owner and its architects for all claims for damages resulting from the contractor's operation in connection with said contract), and (2) to indemnify the contractor for any occurrence causing injury arising out of the subcontractor's performance of this work. In this contention, Haglin relied on the Minnesota Supreme Court decisions in Christy v. Menasha Corporation, 297 Minn. 334, 211 N.W.2d 773 (1973), and Jacobson v. Rauenhorst Corporation, 301 Minn. 202, 221 N.W.2d 703 (1974). These cases provide substantial authority supporting Haglin's contention that it was entitled to full indemnity from Ohman for any loss.[4]
 
 
 13
 As we have noted, the district court did not pass upon the contentions raised in the post-trial motions. Liberty asserts that a favorable resolution of these issues would demonstrate that its insured, Haglin, was exposed to no liability in this case and therefore any settlement entered into by Haglin was voluntary. We find it unnecessary to address these post-trial motion issues in the context of this case except to note, as we have already mentioned, that the post-trial motions raise serious questions as to the validity of the judgment obtained by Sargent in the district court and as to the extent of Haglin's ultimate responsibility to Sargent, if any, in the principal litigation in the court below.
 
 II.
 
 14
 Appellant's brief asserts that Ohman carried liability insurance coverage to protect against Sargent's claim to the extent of $1,500,000. The amount of Johnson's insurance coverage is not disclosed in the record. Liberty, as the insurance carrier for the Preston Haglin Company, insured Haglin for workmen's compensation (coverage IA)[5] and employer's liability (coverage IB) under its workmen's compensation policy the latter provision stipulating limits of $100,000 and obligating the insurer to pay on behalf of Haglin
 
 
 15
 all sums which the insured shall become legally obligated to pay as damages because of bodily injury by accident or disease, including death at any time resulting therefrom sustained in the United States * * * by any employee of the insured rising out of and in the course of his employment by the insured either in operations in a state (Minnesota) * * * or in operations necessary or incidental thereto.
 
 
 16
 Haglin also carried a comprehensive general liability policy with Liberty with a limit of $500,000, which policy contained an employee exclusion; that is, it excluded insurance coverage for claims arising out of injury to Haglin's employees.
 
 
 17
 Early in Sargent's action against Ohman and architect Johnson, Johnson moved to amend his cross-claims against Ohman and Haglin to plead contractual indemnity under the project owner's contract with Haglin and under the subcontract between Haglin and Ohman. On June 1, 1973, Liberty notified Haglin that it was defending in the indemnity action to the extent of coverage IB limits of $100,000, and that in the same action, "we are defending you for any contractual obligation under your Liberty policy to the extent of $500,000 coverage." The letter added that as to contractual liability to Johnson, the coverage might not apply since the policy excluded any obligation to the architect for liabilities arising out of his professional duties including supervision and inspection.[6]
 
 
 18
 The indemnity claims prompted Haglin to bring its fourth-party action against Liberty (see p. 224 supra ).[7] While this fourth-party suit remained pending throughout the original trial and post-trial motions, Liberty defended Haglin under the employer's liability (IB) portion of the workmen's compensation policy ($100,000 limit), and defended for any contractual obligation under the comprehensive general liability policy with the notification that the contractual coverages under the terms of the latter policy might not apply.
 
 III.
 
 19
 We now turn to the extra-judicial transactions involving the parties and the district court, which ousted Liberty from further defense of Haglin and as a result of which Haglin settled the indemnity and contribution claims without the insurer's participation. This settlement obligated Haglin to pay nothing but served to impose upon Haglin's insurer the obligation to pay to the plaintiff, Sargent, the amount of a nonfinal judgment of $1,600,000 (not considering costs and the like), less $900,000 paid in settlement directly to Sargent by Ohman.
 
 
 20
 On October 12, 1973, the district court stayed execution of the judgment until the court "has ruled upon the motions of any party for a new trial." The district court heard the motions of Ohman, Johnson, and Haglin on November 5, 1973. Some off-the-record settlement conferences between court and counsel occurred at subsequent times, but the district court did not enter any order on the post-trial motions. However, on July 30, 1974, the district court wrote the following letter to counsel for the respective parties:
 
 
 21
 The Court has received and carefully read the various letters and arguments submitted by counsel since the April 3-4, 1974 settlement conference; the Court also has in mind the two major decisions of the Minnesota Supreme Court since this Court ordered judgment entered herein on October 9, 1973.
 
 
 22
 As this Court said orally on April 3, 1974, I believe that the Minnesota laws in re contribution and indemnity have been altered extensively since I entered judgment. I think the Christy vs. Menasha Corp. (297 Minn. 334, 211 N.W.2d 773 (1973)) and Carlson vs. Smogard (298 Minn. 362, 215 N.W.2d 615 (1974)) cases now permit a defendant, such as Axel H. Ohman, Inc., to obtain contribution from a negligent employer. The Carlson case shows that the Minnesota Supreme Court is going to permit contribution as they indicated they might in Haney vs. International Harvester (294 Minn. 375, 201 N.W.2d 140 (1972)). They held unconstitutional M.S. 176.061, subd. # 10, which merely codified the prior existing Minnesota common law.I believe that since the Christy decision the judgment I ordered on indemnity is now invalid and that architect, Johnson, is entitled to indemnity only from Preston Haglin Co. for many of the reasons given by Mr. William T. Egan in his letter memorandum of May 3, 1974. I have just about concluded that Axel H. Ohman, Inc. is going to ultimately be responsible for 55% of the jury verdict, costs, disbursements and interest and that Preston Haglin Co. will ultimately be responsible for 45% of the jury verdict, costs, disbursements and interest.
 
 
 23
 However, neither the Christy case nor the Carlson case are completely determinative of these troublesome issues. This Court possesses the authority to certify these issues to the Minnesota Supreme Court pursuant to the provisions of M.S. 480.061; and this Court has concluded that it must certify to the Minnesota Supreme Court these issues and perhaps other issues that were raised by the post trial motions. However, before this Court writes an extensive memorandum on the law involved and certifies these questions, this Court would appreciate having the parties to this matter make one more serious effort to settle. This Court with its tremendous work load cannot function unless there are a large number of disputes of this nature settled so as to lessen this Court's work load.
 
 
 24
 I hope to see a settlement of this case before the 15th of August, 1974.
 
 
 25
 Sincerely,
 
 Miles W. Lord
 United States District Judge
 MWL/mf
 
 26
 We must note what the court did not do in this letter. The court did not dispose of the pending motions so as to settle the rights of the parties in the district court and permit any of the parties to bring an appeal. The district court did not make a determination to certify any unsettled question under Minnesota law to the Minnesota Supreme Court pursuant to the certification statute, Minn.Stat.Ann. § 480.061. The court ignored Haglin's substantial claims for indemnity against Ohman. The court did not in any way comment upon the substantial questions raised as to the propriety of the direction of a verdict on liability issues. See p. 226, supra.
 
 
 27
 Most significantly, none of the cases cited by the court in its letter in any way supported the court's "belief" that contribution would lie in favor of Ohman against Haglin. At the time the letter in question was written, the Minnesota Supreme Court had not expanded its restitution doctrines to permit a negligent defendant to recover contribution from a plaintiff's employer, whose negligence had also caused plaintiff's injury.
 
 
 28
 This court had reviewed the state of the Minnesota law in Guillard v. Niagara Machine & Tool Works, 488 F.2d 20 (8th Cir. 1973), a case filed more than six months prior to Judge Lord's letter. In that case, Judge Ross, writing for the court, considered a fact situation in which an employee of Gage Tool Company, Inc. brought an action for bodily injury against the manufacturer of a power press, Niagara Machine & Tool Works. Niagara, as the defendant, impleaded Gage Tool as a third-party defendant for contribution or indemnity alleging that Gage was guilty of wanton and reckless misconduct in permitting the machine to be operated without adequate guarding. In discussing existing Minnesota law (Haney v. International Harvester, cited in Judge Lord's letter), Judge Ross wrote:
 
 
 29
 The (Minnesota Supreme) court concluded that since there may be a due process violation when a third-party tortfeasor's right to indemnity is extinguished by the workmen's compensation laws without providing him a reasonable substitute for his right, they should reconsider granting indemnification where there is a great disparity in the degree of fault of the parties. However, the court indicated a reluctance to decide the important issues presented by the case without a factual setting. Accordingly, the court held that, because of the question posed, they preferred to have a trial, which would include a determination of percentage of negligence as between the employee, the employer and the manufacturer. The trial court was directed to pass upon all issues raised in new trial including all the issues discussed in the opinion. The order of the district court dismissing the third-party action by the manufacturer against the employer was reversed but without prejudice to a renewal of a motion for a similar order after the trial and after a final determination of the Minnesota Supreme Court. Prior to retrial, however, the case was settled. (Id. at 24 (emphasis added).)
 
 He added the following:
 
 30
 We believe that the Minnesota Supreme Court indicated in Haney that they intended to change the Minnesota rule that precluded indemnity from an employer who was a joint tortfeasor, but whose common liability was extinguished by the payment of workmen's compensation. However, while the Minnesota court may have signaled that a change in Minnesota law was imminent, nevertheless it did not indicate the substantive scope of that change. Thus, we are faced not with a question of unclear state law where there is ambivalent precedent in the state courts; rather, we are faced with a problem of nonformulated state law. (Id. at 24.)
 
 
 31
 Minnesota case law, at the time Guillard was filed, afforded no support to Ohman's claim to entitlement to contribution against a less negligent tortfeasor-employer such as Haglin.[8]
 
 
 32
 Upon analysis, we find it difficult to understand how Judge Lord's letter of July 30, 1974, served to clarify the rights of the parties so as to lead to a negotiated settlement. The expression of opinion as to the ultimate responsibility of the parties cannot be supported by the cases cited and is in conflict with the penultimate paragraph of the letter in which Judge Lord concluded that he "must certify to the Minnesota Supreme Court these issues * * *." Nevertheless, the district court's letter did precede a settlement arrangement made through collaboration of counsel for Sargent, Ohman, and Haglin excluding participation by counsel representing Liberty (and as previously noted, Johnson's counsel apparently elected not to participate). We turn to a discussion of that settlement.
 
 
 33
 On August 19, 1974, Robert G. Share, as the personal attorney for Haglin, wrote Liberty asserting that Haglin faced a potential judgment of at least $800,000, should it be determined that it was liable for 45 percent of the verdict, costs and disbursements, referring to Judge Lord's letter. Share also indicated that Ohman claimed Haglin was liable for all of the judgment. Share demanded that Liberty afford $500,000 general liability coverage or IB workmen's compensation policy coverage to that limit, and that it afford $2,000,000 umbrella coverage as prayed for in the fourth-party complaint. The letter went on to state:
 
 
 34
 * * * or (2) my client waives the $100,000.00 you admit exists under Coverage B of the compensation policy without such waiver affecting our claim that we should have $500,000.00 coverage thereunder, and demands that you and your appointed attorneys, John R. deLambert of Van Eps, Gilmore & Chantry, withdraw from further participation in this litigation, so that we may be free to take such steps as we feel are necessary to protect ourselves, including some type of settlement which may be advantageous to my client.My client insists that on or before 3:00 P.M. on Monday, August 26, 1974, you advise as to which of the above alternatives you are going to pursue; if we are not advised that you are withdrawing your answer to our fourth-party complaint and admitting that there is $2,500,000.00 of insurance coverage to protect us, we shall, ex parte, apply to the Honorable Judge Miles W. Lord of the U.S. District Court at 4:30 P.M. on August 26, 1974, to issue an order removing your appointed attorneys from continuing with the defense of our client so that we shall be free to pursue such remedies and/or settlements which we believe will be of advantage to our client.
 
 
 35
 Liberty responded by letter dated August 26, 1974, refusing the demand and stating that it was defending under coverage IB of the workmen's compensation and employer's liability policy.
 
 
 36
 The very next day, August 27th, Haglin's attorney signed a petition praying for the removal of Liberty and its appointed defense attorney from further participation in the defense of the case, reciting in that petition that Preston Haglin "waives the $100,000 admitted coverage under coverage B" of the workmen's compensation policy without said waiver affecting its claim that it is entitled to $500,000 thereunder as prayed in the fourth-party complaint.
 
 
 37
 The district court signed an order under date of August 27, 1974, removing Liberty Mutual's attorney from the case, notwithstanding the court's statement to an attorney representing Liberty at the hearing on the petition that it would await briefs. Indeed, the attorney wrote Judge Lord a letter under date of September 3rd, advising Judge Lord that a settlement arrangement had already been negotiated by other parties, and had come to light by release of a Minnesota Workmen's Compensation Commission provisional order dated August 27, 1974, dealing with allocation of proceeds amounting to $900,000 being paid under the proposed stipulated settlement. Liberty's attorney stated that it had offered to contribute its full policy coverage (as seen by Liberty) of $100,000; that Liberty stood on its legal rights in the matter and "(would) not be elbowed aside as is proposed." The attorney asked that the pending motion for the removal of Liberty's attorney be denied. Of course, as we have noted, the order had already been entered.
 
 
 38
 Within a few days, on September 5, 1974, Liberty petitioned for a writ of mandamus or prohibition against Judge Lord, seeking to prohibit Judge Lord from ruling on the petition to discharge Liberty's attorney from the case or vacating any such order by Judge Lord and compelling Judge Lord to rule on the motions pending in the action.[9] Our denial of mandamus relief, contrary to a statement in appellant Sargent's brief, did not consider nor dispose of the merits of the petition.
 
 
 39
 Because of the timing of the proceedings held before Judge Lord on August 27, 1974, with regard to the petition for removal of Liberty's attorney, and the release of information from the Minnesota Workmen's Compensation Commission, we must conclude that the proposed settlement which would serve to limit Haglin's liability to the amount of the insurance proceeds had already been arranged.[10] It necessarily follows that when Haglin sought to waive a conceded $100,000 coverage under coverage IB of the workmen's compensation policy, Haglin knew it would not incur any liability to Sargent by waiving that policy provision. Counsel for Haglin admitted as much in oral argument before this court.
 
 
 40
 Thereafter, the parties filed and Judge Lord approved an agreement, under date of November 14, 1974, which provided for amending the judgment in Sargent's lawsuit to add accrued interest and costs to bring the total money judgment to $1,766,556.72. The effect of this settlement and of the judgment entered thereon served to impose liability for the judgment (except the $900,000 paid to Sargent by Ohman) upon Haglin, to be satisfied only out of any insurance proceeds. Liberty appealed from that judgment to this court. We dismissed the appeal for want of jurisdiction since no ultimate final judgment had been entered. Sargent v. Johnson, 521 F.2d 1260 (8th Cir. 1975), supra at n. 2.
 
 
 41
 Although the instant appeal is from a judgment entered by Judge Lord in the fourth-party action determining that Haglin possessed greater coverage than that admitted by the insurance carrier, all issues previously sought to be raised respecting the legitimacy of the court's order in removing Liberty's counsel from the case and in entering a consent judgment binding upon Liberty if additional coverage were established are matters properly before this court on this final appeal.[11]
 
 IV.
 
 42
 To decide this case, we must answer this question: Does a liability insurer which is affording its insured a defense to a pending action for damages breach its contract of insurance by disputing with its insured the amount of coverage that is available for the claim? The converse of the question is whether or not an insured, disputing the amount of coverage with its insurer, breaches the defense and settlement provisions of the policy, the assistance and cooperation provisions of the policy, and the "no action" clause of the policy by unilaterally discharging the insurer's attorney defending the case and thereafter entering into a settlement with the claimant.
 
 
 43
 We hold that the insurer in this case did not breach its policy contract with the insured, but the insured did breach its obligation to the carrier. Accordingly, regardless of the amount of insurance that may have actually been in effect at the time, the insurer is relieved of any responsibility to pay any amount of the settlement agreed upon between Sargent, Ohman, and the insured personally.
 
 
 44
 The insurance contracts all contained "no action" clauses, antiassignment clauses, cooperation clauses, and provisions for the company to defend and settle the case.[12]
 
 
 45
 Two aspects of the insurer's obligation are to be considered. The first is the duty to defend. It cannot be questioned that Liberty was affording a defense to Haglin. The other duty is one to pay or settle. The time for performance of that duty had not been reached.
 
 
 46
 Here, only the so-called contribution or indemnity claims of Ohman against third-party defendant Haglin form the foundation for the claim now made against Liberty for Johnson in no way participated in the settlement. Because the time for Liberty's payment performance had not been reached through a final judgment or a demand for settlement within policy limits. Liberty had not breached any policy obligation to its insured, whether the coverage was $100,000, $500,000, or $2,500,000.
 
 
 47
 The appellees in this case contend Liberty breached an insurance contract by failing to accede to a demand for additional monetary coverage even though the amount of such alleged coverage was not contained in any existing written policy and was not then established judicially. Case law does not support this contention. The Minnesota cases cited by appellees as support for the right of the insured to settle without Liberty's consent are cases in which the insurer refused to defend. Klemmer, et al. v. Ohio Casualty Ins. Co., 188 Minn. 209, 246 N.W. 896 (1933); Farrell, et al. v. Nebraska Indemnity Co., 183 Minn. 65, 235 N.W. 612 (1931); Butler Brothers v. American Fidelity Co., 120 Minn. 157, 139 N.W. 355 (1913). Appellees' cases from other jurisdictions also involve insurers' refusal to defend, see Metcalf v. Hartford Accident & Indemnity Company, 176 Neb. 468, 126 N.W.2d 471 (1964), and Cardinal v. State, 304 N.Y. 400, 107 N.E.2d 569 (1952), motion for rearg. denied, 304 N.Y. 732, 108 N.E.2d 400, motion to amend remittitur denied, 304 N.Y. 875, 109 N.E.2d 885, cert. denied, 345 U.S. 918, 73 S.Ct. 729, 9 L.Ed. 1351 (1953) (insurer refused to defend unless, contrary to policy, insurer's liability was limited to $25,000), or "unreasonable delay" by insurers in undertaking defense, see Otteman v. Interstate Fire & Casualty Co., 172 Neb. 574, 111 N.W.2d 97 (1961); Isadore Rosen and Sons, Inc. v. Security Mutual Insurance Co., 31 N.Y.2d 343, 339 N.Y.S.2d 97, 291 N.E.2d 380 (1972).
 
 
 48
 Those few cases in which courts have permitted insureds to settle even though their insurers were affording timely defense are cases in which the insurers, while defending, denied any liability under the policies in question. Great American Indemnity Co. v. City of Corpus Christi, 192 S.W.2d 917 (Tex.Civ.App.1946); Thomas W. Hooley & Sons v. Zurich General Accident & Liability Insurance Co., 235 La. 289, 103 So.2d 449 (1958); Hawkeye Casualty Co. v. Stoker, et al., 154 Neb. 466, 48 N.W.2d 623 (1951). All such cases are distinguishable from the instant case, in which Liberty has never delayed nor refused a defense of Haglin, has never denied all liability, and has never been presented with a demand that it accede to a reasonable and prudent settlement. See Traders & General Insurance Co. v. Rudco Oil & Gas Co., 129 F.2d 621 (10th Cir. 1942).
 
 
 49
 The theory of the appellees would stand insurance law on its head by requiring an insurance carrier to perform under the terms of a contract not in writing and not yet determined to exist. Here, the insurer was defending under both workmen's compensation (coverage IB) and comprehensive general liability policies. Under neither policy had the obligation to pay matured either by judgment or by a demand for payment of any kind made by the insured at the time the insured ousted the insurer from the case. Here, the demand of the insured was for additional coverage which the insurance company at that point was not obligated to provide by any contract, by any judicial decision, or otherwise. Under these circumstances, the obligations of the insurer must be measured by the then-established insurance coverages.
 
 
 50
 Where a claim is made against an insured which may exceed policy limits, and where the insured and insurer may each incur liability, then each assumes an obligation to act in good faith, to face the facts realistically, and to maintain a mutual respect for the interests of the other. The late Judge Murrah's explanation of the relationship between insurer and insured in Traders & General Insurance Co. v. Rudco Oil & Gas Co., 129 F.2d 621 (10th Cir. 1942), furnishes an appropriate guideline for our decision.[13] Judge Murrah wrote:
 
 
 51
 Where, as here, each (insurer and insured) has a potential liability, the insurer is obligated by contract to defend the suits or claims in the name of assured and to pay the losses incurred to the extent of the limits of its policy. Its obligation to defend and to pay is primary and paramount; consequently, its right to control the litigation is first and paramount, an essential part of which is the right to insist upon the co-operation of the assured, and the assured may not interfere by voluntary assumption of liability or by arbitrarily insisting upon settlement of the claims or suits. But, the rights of the insurer in these circumstances are not absolute, they are subject to moderation by the rule of right and justice. (Id. at 626-27.)
 
 
 52
 Therefore, as a guide for the determination of the question presented here, we think it may be fairly stated that before (the insurer) may interpose the voluntary settlement made by (the insured) as a bar to recovery upon the policy, it must be shown that it acted, not alone in furtherance of its own interest, but it must also appear that it acted in good faith and dealt fairly with the assured. Its manifest attitude and course of conduct must have some legal justification and factual basis.
 
 
 53
 (The insured) had the right to demand not a settlement on its terms and conditions, but a good faith co-operation on the part of (the insurer), wherein both parties would face the facts realistically and with a mutual respect for the interest of each. (Id. at 627-28.)
 
 
 54
 This standard of good faith and mutual respect applies to both parties to the insurance contract. In this case, under the circumstances previously related, we must conclude that the insured's conduct in discharging defense counsel provided by the insurance carrier and entering into a settlement of the pending litigation without the insurer's consent, even with court approval, constituted a violation of terms of the existing policies. Moreover, the insured not only breached its contract, but acted in bad faith. Counsel for the insured did not enter into a bargain to settle its liability claims for a fair price, but entered into a questionable collaboration by which the parties maneuvered through terms of a settlement agreement to impose an uncompromised full balance of a judgment upon the insurer, while the insured incurred no real detriment. In light of the questionable validity of the judgment on its face, and the substantial sum obtained outright by Sargent from Ohman, this seems particularly unreasonable. This kind of bargain represents the antithesis of mutual respect for rights.
 
 
 55
 Haglin's breach of insurance policy provisions (supra at n. 12) and its failure to deal with Liberty in good faith, effectively severed the insured-insurer relationship. Thus, Haglin's settlement arrangement could not bind Liberty under any of its written policies with Haglin or under any unwritten policy which might be determined to arise from the same insured-insurer relationship, regardless of the amount of coverage afforded under such policies. It follows that the entry of judgment in the fourth-party action determining the extent of coverage is irrelevant once the insurer is relieved of its duty to pay by the insured's breach of its duty to the insurer.
 
 
 56
 Accordingly, the action and judgment entered in the fourth-party action binding the insurance company to pay in excess of $700,000 to Sargent is of no force and effect and is set aside and annulled. We direct the district court to enter a dismissal of all claims against the insurer, and we assess costs against Haglin, Ohman, and Sargent.
 
 
 
 [1]
 Liberty sought a writ of mandamus or prohibition from this court to prevent removal of its attorney. We denied the writ in an unreported opinion, stating:
 This denial as well as Judge Lord's ex parte order * * * (removing Liberty's attorney) will not serve to prejudice any defenses, including the defense that the discharge of (Liberty's) attorney violated the liability insurance contract here in question, that (Liberty) might assert in response to claims by any party to the lawsuit that (Liberty) should pay any share of plaintiff's claim which has or will be settled by other parties or their insurance carriers. Cf. Roach v. Churchman, 457 F.2d 1101 (8th Cir. 1972). (Liberty Mutual Ins. Co. v. Lord, No. 74-1646 (8th Cir., filed Sept. 20, 1974).)
 
 
 [2]
 Liberty appealed from this judgment and we held that this court lacked jurisdiction to review the judgment because
 (a) final judgment in this case has not been entered as long as the fourth-party complaint (relating to policy coverages disputed between Liberty and Haglin) was pending and the district court failed to certify an appeal under Rule 54(b). (Sargent v. Johnson, 521 F.2d 1260, 1263 (8th Cir. 1975).)
 We went on to note:
 In the event the district court finds against Liberty in the fourth-party litigation, it will then be in a position not only to appeal the fourth-party claim but also to assert standing to appeal the November 14 judgment and raise the issues it has attempted to present here. (Id. at 1264.)
 
 
 [3]
 In Johnson v. Serra, we rejected Dr. Foster's estimation of damages for a future period of approximately 37 years which took inflationary factors into account. This decision was filed subsequent to the settlement agreement here at issue
 
 
 [4]
 But cf. Anstine v. Lake Darling Ranch, 233 N.W.2d 723 (Minn.1975)
 
 
 [5]
 Liberty has paid Minnesota workmen's compensation benefits to Sargent under coverage IA. The insurer, however, retains subrogation rights with respect to Sargent's recovery. Minn.Stat.Ann. § 176.061. See, e. g., Liberty Mutual Ins. Co. v. Nutting Truck & Caster Co., 295 Minn. 211, 203 N.W.2d 542 (1973)
 
 
 [6]
 The policy exclusion referred to in Liberty's letter of June 1, 1973, reads as follows:
 (2) if the indemnitee is an architect, engineer or surveyor, to bodily injury or property damage arising out of any professional services performed by or for the indemnitee, including (a) preparation or approval of maps, plans, opinions, reports, surveys, designs or specifications and (b) supervisory, inspection or engineering services(.)
 
 
 [7]
 The fourth-party suit for declaratory judgment alleged:
 1) That Liberty had negligently failed to recommend a $2,000,000 "umbrella" policy and therefore should be liable for third-party claims made against Haglin up to $2,000,000;
 2) That Liberty had negligently failed to recommend that IB coverage be increased to $500,000, and therefore should be liable for claims against Haglin up to that amount;
 3) That Liberty had breached a contract with Haglin by failing to issue a policy which provided $500,000 coverage for third-party claims arising from bodily injury to a Haglin employee in the course of his employment, and therefore should be liable; and
 4) That because of representations made to Haglin, Liberty was estopped from denying $500,000 coverage.
 Liberty answered and admitted the existence of the comprehensive general liability policy with limits of liability of $500,000, and the workmen's compensation policy with coverage IB (employer's liability), limiting liability to $100,000, and denied all other allegations of the complaint.
 
 
 [8]
 Recently, in Lamberton v. Cincinnati Corporation, --- N.W.2d --- (filed Feb. 4, 1977), the Minnesota Supreme Court determined that a plaintiff's negligent employer owed contribution to a third-party defendant in an amount proportional to the employer's negligence, but not to exceed its total workmen's compensation liability to plaintiff. The court said:
 This approach allows the third party to obtain limited contribution, but substantially preserves the employer's interest in not paying more than workers' compensation liability.
 In Lamberton, the defendant in fact was less negligent than plaintiff's employer, but the Minnesota Supreme Court did not comment upon that circumstance.
 
 
 [9]
 Liberty Mutual Ins. Co. v. Lord, No. 74-1646, supra at n. 1
 
 
 [10]
 The provisional order before the Minnesota Workmen's Compensation Commission allocating third-party recovery proceeds, a copy of which was attached to the earlier mandamus proceeding, while dated August 27, 1974, is stamped as received by the Workmen's Compensation Commission on August 26, 1974 the day prior to Haglin's filing of a 9:00 a. m. petition with Judge Lord for removal of the insurance company lawyer from the case. That document, if a true copy, indicates that a settlement agreement in fact predated the August 27, 1974, petition for removal of insurer's attorney from the case and the presentation of that petition to Judge Lord
 
 
 [11]
 See nn. 1 & 2 supra
 
 
 [12]
 The workmen's compensation and employer's liability policy contains the following provisions:
 II. DEFENSE, SETTLEMENT, SUPPLEMENTARY PAYMENTS.
 As respects the insurance afforded by the other terms of this policy the company shall:
 (a) defend any proceeding against the insured seeking such benefits in any suit against the insured alleging such injury and seeking damages on account thereof, even if such proceeding or suit is groundless, false or fraudulent; but the company may make such investigation, negotiation and settlement of any claim or suit as it deems expedient; * * *
 ASSISTANCE AND COOPERATION OF THE INSURED * * * The insured shall not, except at his own cost, voluntarily make any payment, assume any obligation or incur any expense other than for such immediate medical and other services at the time of injury as are required by the workmen's compensation law.
 ACTION AGAINST COMPANY COVERAGE B. No action shall lie against the company unless, as a condition precedent thereto, the insured shall have fully complied with all the terms of this policy nor until the amount of the insured's obligation to pay shall have been finally determined either by judgment against the insured after actual trial or by written agreement of the insured, the claimant and the company. * * *
 ASSIGNMENT. Assignment of interest under this policy shall not bind the company until its consent is endorsed hereon * * *.
 The comprehensive general liability policy contained similar provisions. We recognize these clauses as typical of standard provisions in liability insurance policies.
 
 
 [13]
 Cited with approval by the Minnesota Supreme Court in Bratnober v. Rowell, Inc., 266 Minn. 442, 123 N.W.2d 916, 920-21 (1963)