**Paul Frank SARGENT, Relator,**

v.

**PRESTON–HAGLIN CONSTRUCTION CO., et al., Respondents.**

**No. 51245.**

Supreme Court of Minnesota.

April 3, 1981.

| | |
|---|---|
| Reimbursement to be paid to Liberty Mutual | − 96,861.45 |
| Balance to be paid to employee, but to constitute a credit against unpaid workers' compensation benefits to date and in the future | $252,011.63 |

Grose, Von Holtum, Von Holtum, Sieben & Schmidt and David Stofferahn, Minneapolis, for relator.

Van Eps & Gilmore, Minneapolis, for respondents.

SIMONETT, Justice.

Employee-relator, Paul Frank Sargent, seeks review by certiorari of a decision of the Workers' Compensation Court of Appeals granting the workers' compensation insurer, Liberty Mutual Insurance Company, subrogation rights to the proceeds of the employee's settlement recovery in a third party tort action. Essentially, the employee seeks to avoid Liberty's subrogation rights under Minn.Stat. § 176.061, subd. 6 (1976),[1] by extending the equitable policies enunciated in *Lambertson v. Cincinnati Corporation*, 312 Minn. 114, 257 N.W.2d 679 (1977), to a unique factual situation. We deny the writ and affirm.

On July 14, 1969, Sargent sustained serious injuries while working on a construction job. He commenced a lawsuit which, after a jury trial in federal district court, he settled for $900,000. Liberty has now petitioned the Workers' Compensation Division for credit and reimbursement of $96,861.45 paid the employee in compensation benefits. The compensation judge ruled Liberty Mutual was entitled to subrogation and credit, allocating the proceeds as follows:

| | |
|---|---|
| Total proceeds recovered | $900,000.00 |
| Less attorneys fees | − 300,000.00 |
| | 600,000.00 |
| Less costs | − 76,690.37 |
| Net proceeds recovered | 523,309.63 |
| Employee's statutory share | − 174,436.54 |
| Balance | 348,873.08 |

The Workers' Compensation Court of Appeals unanimously agreed the insurer was entitled to its subrogation rights, rejecting the employee's claim that the reimbursement provision of section 176.061, subdivision 6, should not be applied.

The employee says this result is unfair. He says Liberty receives its entire subrogation and credit interest out of the employee's recovery even though Liberty's employer was found to be negligent in causing the employee's injury. Since the employer was negligent in causing the injury, it should contribute to plaintiff's recovery instead of being allowed to profit from it. To determine the validity and accuracy of these assertions, more factual background is needed.

After his accident, Sargent sued a subcontractor on the job, Axel H. Ohman, Inc., and the architect, Roger T. Johnson, alleging the subcontractor had removed coverings from an elevator shaft in the building and that Johnson had been negligent in enforcing safety standards. Ohman and Johnson, in turn, brought in Preston-Haglin Company (Haglin), the prime contractor on the job, who was also Sargent's employer, claiming Haglin had failed to provide a safe place to work and seeking contribution and indemnity. The defending parties then asserted other cross-claims against each other for contribution or indemnity, including contractual indemnity. Liberty Mutual's interest in this litigation was both as the workers' compensation insurer for Haglin and as Haglin's liability insurer.

Sargent's lawsuit came on for trial in federal district court in October 1973. The trial court directed a verdict in favor of

---

1. The statute has since been amended but, although the calculations have been altered, the issues on this appeal remain the same. For a full description of the statute and its amendments, *see Kealy v. St. Paul Housing & Redevelopment Authority*, 303 N.W.2d 468 (Minn. 1981).

plaintiff Sargent and against Ohman, Johnson and Haglin, leaving damages and apportionment of liability to the jury. The jury awarded $1.6 million to Sargent and apportioned fault 55% to Ohman, 15% to Johnson, and 30% to Haglin. Under then current law, Haglin, the employer, was not liable for its 30% fault because of the Workers' Compensation Law; and *Lambertson,* which would have allowed Ohman to obtain reimbursement from Haglin to the extent of compensation benefits paid, had not yet been decided.

The trial court entered judgment in favor of Sargent and against Ohman and Johnson, determining Ohman liable for ¹¹/₁₄ths of the $1.6 million judgment and Johnson for ³/₁₄ths, subject to Johnson's right of indemnity. A stay of execution was granted to allow for disposition of post-trial motions. Subsequently, in August 1974, before a ruling on the post-trial motions but after the trial court had indicated he was inclined to enter judgment making Ohman 55% responsible and Haglin 45%, a settlement was made.

The terms of the settlement and the events and circumstances leading to it are set out in *Sargent v. Johnson,* 551 F.2d 221 (8th Cir. 1977), and need not be repeated in detail here. In any event, Ohman, Haglin and Sargent collaborated on an intricate settlement agreement, under which:

1) Ohman paid Sargent $900,000 (55% of $1,600,000).

2) Sargent released Ohman and Johnson from any and all further liability.

3) Haglin permitted entry of judgment against Haglin and Ohman for $1.6 million, with Ohman having partial indemnity over and against Haglin for 45% of the judgment.

4) Sargent agreed he would not collect on the $1.6 million judgment from Haglin or any of the other defendants personally but only on Haglin's cause of action against Liberty Mutual on its liability policies covering Haglin. Haglin and Sargent agreed to pursue the lawsuit against Liberty Mutual to establish liability insurance coverage for Sargent's judgment.

5) Sargent agreed "[t]o satisfy all claims of Liberty Mutual asserted against any party to this Agreement or against Johnson by reason of its rights pursuant to the provisions of Chapter 176 of the Minnesota Statutes and by reason of its payment of Workmen's Compensation benefits to Sargent thereunder, or for which Liberty Mutual may be ultimately required to pay as future Workmen's Compensation."

The net result of this settlement arrangement, as described by the court of appeals in *Sargent v. Johnson,* was "to impose liability for the judgment (except the $900,000 paid to Sargent by Ohman) upon Haglin, to be satisfied only out of any insurance proceeds." 551 F.2d at 230. In negotiating the settlement, Haglin had discharged the attorney retained by Liberty to defend it, so that only Haglin personally, not its insurer, was a party to the settlement.

After the settlement, Sargent and Haglin pursued the suit against Liberty and were successful in obtaining a decision finding Liberty had additional liability insurance coverage and that Liberty was obligated to pay Sargent the $700,000 remaining unpaid under the stipulated judgment. Liberty appealed to the Eighth Circuit from this decision, and the appellate court reversed, holding that Haglin had breached the cooperation clause in its policy with Liberty—indeed, that Haglin had acted in bad faith in making the settlement—and that Liberty owed nothing to Sargent. *Sargent v. Johnson,* 551 F.2d 221 (8th Cir. 1977).

The net result is that now, after the third party litigation has been exhausted, Sargent has recovered on his third party tort action a total of $900,000. It is from this $900,000 that Liberty, as the workers' compensation carrier, now seeks its subrogation interest.

Sargent argues it is unfair that Liberty should get 100% reimbursement while he, the injured employee, "has received only 55% of the damages assessed by the jury." Especially is this unfair, he argues, when Liberty represents an employer who was

found to be 30% responsible for Sargent's injuries and contractually bound to indemnify the architect, Johnson, for his 15% of the liability. Neither Liberty nor the employer has ever paid anything in the common-law action. Sargent concludes—

It is readily apparent that the situation is one in which a negligent employer, through its workers' compensation insurer, is attempting to enrich itself at the expense of an injured employee who has not made a full recovery on his third party action.

The argument sounds appealing. In our view, however, appellant neglects the full factual setting of this case. It has never been finally established that Sargent was entitled to $1.6 million. While that was the jury's verdict, the amount was never judicially confirmed, since the settlement occurred before an appeal, indeed, before post-trial motions had been decided. Nor is it accurate to say Haglin was found to be 30% at fault, since here, too, that finding was never judicially confirmed. Indeed, as the Eighth Circuit observed, "* * * Sargent's verdict rested on somewhat tenuous grounds." 551 F.2d at 224.

Our first inquiry into matters such as this is to the controlling statute. Section 176.-061, subdivision 6, directs in clear and unambiguous language that "[t]he proceeds of all actions for damages or settlement * * * shall be divided ‘* * *.'" The statute provides for no exemptions. We clearly have proceeds of a settlement involved here and, absent exceptional circumstances, we agree with the court of appeals the proceeds should be divided between the parties. Further, notwithstanding appellant's arguments, we find no exceptional circumstances in this case warranting a statutory exemption.

It is true that Sargent can point to a verdict for $1.6 million against Haglin. In-

deed, he can point to a judgment in that amount against Haglin, on which $700,000 remains unpaid. Sargent can also point out that Haglin has conceded its negligence and consequent responsibility for the unpaid judgment, since Haglin never appealed the verdict or the judgment entered thereon. Without a doubt, as between Sargent and Haglin, Haglin is a judicially determined negligent employer. But this overlooks the price Sargent paid to get these concessions from Haglin. In return for an admission of liability, the employee promised the employer personal immunity from that liability. Presumably, Haglin would not have conceded its own negligence without such a promise.

Liberty never agreed to its employer's concession of liability. It strenuously opposed that concession but, by reason of the collaboration of the employer and the employee, it was deprived of any opportunity to set aside the finding of its insured's liability. It would be unfair to now allow Sargent to argue that the Workers' Compensation Division must treat Liberty as if it had agreed that its employer-insured was liable to Sargent.

Sargent suggests that Haglin was compelled to enter into the settlement agreement by reason of Liberty's intransigence in refusing to negotiate after the jury verdict, leaving its insured exposed to a large verdict. Even if this were so,[2] it would be Haglin's complaint, not Sargent's. In any event, the Eighth Circuit rejected any contention that Liberty acted improperly, characterizing the transaction this way:

Moreover, the insured not only breached its contract, but acted in bad faith. Counsel for the insured did not enter into a bargain to settle its liability claims for a fair price, but entered into a questionable collaboration by which the parties maneuvered through terms of a settlement

---

**2.** Actually, as reported by the Eighth Circuit, Liberty acknowledged it did have $100,000 liability coverage under its workers' compensation policy and, after the jury verdict, offered to contribute this sum to a settlement. Instead, Haglin waived this coverage and demanded Liberty admit to $2.5 million coverage, other-

wise Haglin would make its own settlement arrangements with Sargent. The court of appeals said the record seemed to show that Haglin had already made its settlement with Sargent before making its demand on Liberty. *Sargent v. Johnson*, 551 F.2d 221, 229 (8th Cir. 1977).

agreement to impose an uncompromised full balance of a judgment upon the insurer, while the insured incurred no real detriment.

551 F.2d at 232.

So it is not true to say Liberty, as the liability carrier, has somehow wrongfully avoided any obligation to pay the unpaid balance of the tort judgment. It has been judicially determined Liberty had no such obligation. Nor is it true to say that the "negligent" employer has somehow wrongfully avoided payment on the tort judgment. The employee deliberately collaborated with the employer and waived any claim of contribution from the employer personally.[3] On the other hand, the claim for contribution against the employer's insurer, which was preserved, was then lost in the courts. Having lost the claim against the insurer for contribution, the employee cannot now seek to recover indirectly by asserting the employer's insurer is not entitled to subrogation.

Sargent says we should apply *Lambertson v. Cincinnati Corporation*, 312 Minn. 114, 257 N.W.2d 679 (1977), or at least the spirit of *Lambertson*, namely, that the negligent employer should contribute to the employee's tort recovery fund to the extent of compensation paid.[4] But once again we are confronted with the settlement agreement. We do not know and have no way of knowing, since any further trial on liability and damages is precluded, what the employer's share of liability, if any, might be. To speculate on this and to insist now that Liberty either reimburse Ohman under the *Lambertson* doctrine (which would not help Sargent) or forego its subrogation interest, would be to ignore the releases Sargent has given and require a judicial rescission of the settlement agreement between Sargent, Ohman and Haglin.[5] This we will not do.

The employee here cannot complain of the bargain he knowingly made, and certainly not against Liberty who was not a party to the agreement. In return for a promise not to collect from the employer personally, the employee received the chance to collect the stipulated judgment from Liberty if he could prove policy coverage. This was a fair bargain. As with most compromises, "[o]ftentimes a party may be willing to yield something for the sake of a settlement; and if he does so with a full knowledge of the circumstances, he cannot affirm the settlement, and afterwards maintain a suit for that which he voluntarily surrendered." *Wm. Lindeke Land Co. v. Kalman*, 190 Minn. 601, 612–13, 252 N.W. 650, 655 (1934), quoting from *Chi-*

---

**3.** If Liberty were denied subrogation here, it might then sue its insured, Haglin; but if that were to happen, Sargent, under his settlement agreement, would have to indemnify Haglin.

After the jury verdict came in, all parties had difficult decisions to make in appraising their respective positions. If the jury verdict were appealed and sustained, Sargent could have recovered his entire $1.6 million verdict from Ohman. On the other hand, by settling, Sargent was at least assured of $900,000 plus the chance of collecting the remaining $700,000 from Liberty. Liberty apparently was relying in large part on what it then understood to be an employer's immunity from suit under the Workers' Compensation Law.

**4.** The employee cites various California decisions which hold, under somewhat similar workers' compensation statutory language, that a negligent employer cannot receive reimbursement or credit from the employee. *E.g., Nelsen v. Workmen's Compensation Appeals Board*, 11 Cal.App.3d 472, 89 Cal.Rptr. 638 (1970); *Roe v. Workmen's Compensation Appeals Board*, 12 Cal.3d 884, 117 Cal.Rptr. 683,

528 P.2d 771 (1974). Minnesota's policy with respect to the negligent employer's right of subrogation is, however, expressed in *Lambertson v. Cincinnati Corporation*, 312 Minn. 114, 257 N.W.2d 679 (1977).

**5.** It cannot be said Liberty's assertion of its subrogation interest comes as a surprise to the parties to the settlement agreement. The settlement agreement was directed at efforts to collect the balance of the stipulated tort judgment from Liberty as the liability insurance carrier. The parties were aware that Liberty, as the workers' compensation carrier, would be claiming a subrogation interest out of whatever the final recovery would be. After Ohman paid $900,000 in settlement, the Workers' Compensation Division in August 1974 allocated this recovery in a provisional order, allocating $279,305.95 for reimbursement or credit on compensation benefits. The settlement agreement provided that Sargent would satisfy whatever subrogation interest Liberty might have out of the recovery.

*cago, Milwaukee & St. Paul Railway Co. v. Clark,* 178 U.S. 353, 369, 20 S.Ct. 924, 930, 44 L.Ed. 1099 (1900).

We hold that under the unique circumstances of this case, where the injured employee, under a settlement agreement, has precluded the judicial establishment of the liability of his employer, the employer's insurer is not deprived of its subrogation and credit under Minn.Stat. § 176.061, subd. 6 (1976).

Sargent also says we should apply the "principles underlying" *Naig v. Bloomington Sanitation,* 258 N.W.2d 891 (Minn.1977), but the employee has not, as yet, taken this route. The employee has not chosen to seek allocation of his $900,000 recovery into that part representing items recoverable under workers' compensation (to which Liberty is subrogated) and that part representing items not recoverable under workers' compensation. *See Henning v. Wineman,* 306 N.W.2d 550 (Minn.1981) filed March 20, 1981. Whether a *Naig* approach is appropriate is not now before us.

The decision of the Workers' Compensation Court of Appeals is affirmed.

Affirmed.

SCOTT, J., took no part in the consideration or decision of this case.