Paul F. SARGENT, Plaintiff,

v.

Robert J. JOHNSON, Architect, Defendant,

and

AXEL H. OHMAN, INC., a corporation, Defendant and Third-Party Plaintiff,

v.

PRESTON-HAGLIN CO., a corporation, Third-Party Defendant and Fourth-Party Plaintiff,

v.

LIBERTY MUTUAL INSURANCE COMPANY, Fourth-Party Defendant.

No. 81–1097.

Supreme Court of Minnesota.

Aug. 27, 1982.

Grose, Von Holtum, Von Holtum, Sieben & Schmidt and David A. Stofferahn, Minneapolis, for plaintiff.

Gilmore, deLambert, Aafedt, Eustis & Forde and Curtis C. Gilmore and Janet Monson, Minneapolis, for defendant.

WAHL, Justice.

Plaintiff Paul Sargent seeks to allocate his $900,000 settlement from a personal-injury action in federal court between proceeds recoverable under workers' compensation and those not recoverable. Recognizing that whether Sargent is entitled to such an allocation is a question of state law, the United States District Court, District of Minnesota, certified to our court the following question: "Under the facts of this case, is the plaintiff entitled to an allocation of his settlement proceeds between claims recoverable under workers' compensation and those not recoverable under workers' compensation?"[1] We answer that question in the negative.

Sargent was injured in 1969, when he fell 7½ stories down an unguarded elevator shaft while working on a highrise construction project. He brought a federal court action to recover for his injuries against Axel H. Ohman, Inc. (Ohman), a subcontractor on the job, and Roger T. Johnson (Johnson), the architect on the project. Defendants Ohman and Johnson joined Preston-Haglin Co. (Haglin), general contractor and Sargent's employer, seeking contribution or indemnity.

The district court directed a verdict in favor of Sargent and against Johnson, Ohman, and Haglin on the issue of liability and sent to a jury the issues of assessment of damages and apportionment of fault. The jury entered an award of $1,600,000 and apportioned fault as follows: Ohman, 55%; Johnson, 15%; Haglin, 30%. The court awarded Johnson indemnity against Haglin and Ohman and determined that Ohman was responsible for eleven-fourteenths and Johnson for three-fourteenths of the judgment amount. Judgment was entered pursuant to the special verdict and findings, but the court's failure to rule on the parties' post-trial motions prevented them from appealing.

The court allowed Haglin to dismiss the defense counsel provided by Liberty Mutual

---

1. Authority to certify such a question derives from the Uniform Certification of Questions of Law Act at Minn.Stat. § 480.061 (1980).

Insurance Company (Liberty), Haglin's insurer. Ohman, Haglin, and Sargent then entered into a settlement agreement under which Ohman paid $900,000 to Sargent, who was to receive the remaining $700,000 of the judgment amount from the proceeds of Haglin's insurance policy with Liberty. The district court modified its judgment to reflect the settlement agreement and, in a subsequent fourth-party action brought against Liberty by Haglin, determined that Liberty was liable for the balance of the judgment award. The Eighth Circuit reversed, stating that "Haglin, by entering into a settlement agreement with Sargent and Ohman without the concurrence or consent of its insurance carrier, breached the cooperation clauses of the insurance policies." *Sargent v. Johnson*, 551 F.2d 221, 224 (8th Cir. 1977).

Liberty then petitioned the Workers' Compensation Division for an order determining its right of subrogation to Sargent's settlement. The compensation judge ruled that Liberty was entitled to subrogation and allocated the settlement proceeds under Minn.Stat. § 176.061, subd. 6 (1980). On appeal, the Workers' Compensation Court of Appeals rejected Sargent's claim that the reimbursement provision of section 176.061, subd. 6 should not be applied and upheld the order of the compensation judge.

We agreed with the Court of Appeals, ruling that "under the unique circumstances of this case, where the injured employee, under a settlement agreement, has precluded the judicial establishment of the liability of his employer, the employer's insurer is not deprived of its subrogation and credit under Minn.Stat. § 176.061, subd. 6 (1976)." *Sargent v. Preston-Haglin Construction Co.*, 304 N.W.2d 625, 630 (Minn.1981) (*Sargent I*). In that case, Sargent argued that it was unfair for Liberty to receive reimbursement while he received only 55% of the damages assessed by the jury. Sargent's argument, however, ignored several crucial facts: (1) that, since the settlement occurred before appeal and before post-trial motions had been decided, Sargent's $1.6 million award was never judicially confirmed; (2) that Haglin's admission of liability was conditioned on Sargent's promise not to hold Haglin personally liable for the award; and (3) that Liberty had never agreed to Haglin's concession of liability and had been deprived of any opportunity to set aside the liability finding. *Id.* at 628.

In *Sargent* I, Sargent urged us to apply the principles underlying *Naig v. Bloomington Sanitation*, 258 N.W.2d 891 (Minn.1977). This we declined to do because, we said, "The employee has not, as yet, taken this route. The employee has not chosen to seek allocation of his $900,000 recovery into that part representing items recoverable under workers' compensation (to which Liberty is subrogated) and that part representing items not recoverable under workers' compensation." *Sargent* I, 304 N.W.2d at 630. Sargent then returned to federal court, asking for such an allocation. The court determined that 60% of the proceeds ($540,000) would be attributable to nonrecoverable claims and 40% ($360,000) to recoverable claims. However, since the issue of whether Sargent is entitled to such an allocation is a matter of state law for which there is no precedent, the district court certified to this court the threshold question of Sargent's entitlement.

█ Proceeds of a third-party settlement are divided according to Minn.Stat. § 176.061, subd. 6, which provides, in general, that the injured employee receive one-third of the settlement award after costs and fees have been subtracted.[2] The employer and

---

**2.** The statute provides:

The proceeds of all actions for damages or settlement thereof under this section, except for damages received under subdivision 5, clause (b) received by the injured employee or his dependents or by the employer, or the special compensation fund, as provided by subdivision 5, shall be divided as follows:

(a) After deducting the reasonable cost of collection, including but not limited to attorneys fees and burial expense in excess of the statutory liability, then

(b) One-third of the remainder shall in any event be paid to the injured employee or his dependents, without being subject to any right of subrogation.

its insurance company then have a subrogation interest in the remainder. The statute does not apply, however, to damages which are not recoverable under workers' compensation. In *Naig*, the injured employee and his wife agreed with the tortfeasor on a settlement that "encompasse[d] everything other than the subrogated interest of the compensation carrier." *Id.* at 893. We ruled that:

> [s]o long as the employer is notified of negotiations leading to such a settlement * * * and so long as the employee demonstrates that the settlement concerns only damages not recoverable under workers' compensation, or allocates the settlement into recoverable and nonrecoverable claims, the employer cannot credit the nonrecoverable portion of the settlement against compensation payments.

*Id.* at 894 (footnote omitted). Under such circumstances, the employer and carrier may maintain separate claims against the third-party tortfeasor. *Lang v. William Bros. Boiler & Manufacturing Co.,* 250 Minn. 521, 85 N.W.2d 412 (1957).

■ Four years after *Naig*, we held that a district court has jurisdiction to allocate settlement proceeds between recoverable and nonrecoverable damages. *Henning v. Wineman*, 306 N.W.2d 550 (Minn.1981). When a settlement is so allocated, the employee receives the nonrecoverable portion of the proceeds, while the recoverable amounts are distributed under the statute.

> (c) Out of the balance remaining, the employer, or the special compensation fund, shall be reimbursed in an amount equal to all benefits paid under this chapter to or on behalf of the employee or his dependents by the employer, or special compensation fund, less the product of the costs deducted under clause (a) divided by the total proceeds received by the employee or his dependents from the other party multiplied by all benefits paid by the employer, or the special compensation fund, to the employee or his dependents.
>
> (d) Any balance remaining shall be paid to the employee or his dependents, and shall be a credit to employer, and the special compensation fund, for any benefits which employer is obligated to pay, but has not paid, and for any benefits that such employer shall be obligated to make in the future.

In such a case, the employee forfeits his statutory right to one-third of the recovery. *Id.* at 553.[3] In *Henning*, plaintiff and the third-party tortfeasor entered into a settlement agreement under which plaintiff received $50,000 "for his injuries." The insurance carrier agreed that the settlement amount was reasonable. At plaintiff's request, the district court then held an allocation hearing and determined that 50% of the award was intended to compensate plaintiff for claims not recoverable under workers' compensation.

■ In this case, as in *Henning*, plaintiff has settled his claim against the third-party tortfeasor without a distribution being made between items recoverable and those not recoverable under workers' compensation. Sargent claims a right to allocation of proceeds under *Henning*. Liberty argues, however, that Sargent is not entitled to such an allocation because the settlement agreement did not meet the standards set by this court in *Naig* and *Henning*. *Naig* requires that the employer be "notified of negotiations leading to such a settlement so that it can appear or intervene to protect its interest." 258 N.W.2d at 894. In *Henning*, the compensation carrier agreed that the total settlement amount was reasonable. 306 N.W.2d at 551. In both cases all interested parties were able to participate in the settlement agreements.

> There shall be no reimbursement or credit to the employer, or the special compensation fund, for interest or penalties.

Minn.Stat. § 176.061, subd. 6 (Supp.1981).

**3.** The employee may choose to have the employer's subrogation interest determined in one of two ways. Under the first method, the proceeds are distributed according to Minn.Stat. § 176.061, subd. 6; the employee receives one-third of the net settlement amount as compensation for nonrecoverable damages. Under the second option, the district court makes an allocation between amounts recoverable and those not recoverable under workers' compensation; the employee forfeits his right to one-third of the recovery. *Henning v. Wineman*, 306 N.W.2d 550, 552 (Minn.1981).

In this case, however, Liberty was unable to protect its interests during settlement. Robert Share, Haglin's personal attorney, wrote Liberty on August 19, 1974, requesting that Liberty's attorney withdraw so that he and Haglin would be "free to take such steps as we feel are necessary to protect ourselves, including some type of settlement which may be advantageous to my client." *Sargent v. Johnson,* 551 F.2d at 228. Eight days later, Liberty's attorney was removed by court order, and settlement soon followed. Both the Eighth Circuit and our court have noted the prejudice that Liberty suffered by these actions of the district court.

There is no question that additional special interrogatories regarding allocation of recovery proceeds between compensable and noncompensable claims could have been submitted to the jury. There is also no question that the trial court, on entry of judgment on the verdict, could have allocated, and properly, proceeds between compensable and noncompensable claims. In this case, however, the plaintiff chose to enter into a settlement that precluded the judicial establishment of the liability of his employer or the other defendants in the case. In entering a settlement that included recovery for both compensable and noncompensable claims but which precluded the insurer from obtaining a judicial determination of liability, Sargent, in a sense, waived his right to exercise the second option set out in *Henning.*[4]

Under the unique facts of this case, where a compensation carrier was excluded from settlement negotiations and the settlement precluded the carrier from a judicial establishment of liability, we hold that settlement proceeds must be distributed according to Minn.Stat. § 176.061, subd. 6. The employee does not have a right to allocation of the award into claims recoverable under workers' compensation and those not recoverable.

Certified question answered in the negative.

---

4. See footnote 3 for a description of the employee's two options.