**UNITED STEELWORKERS OF AMERICA, LOCAL 6115, Appellant,**

**v.**

**QUADNA MOUNTAIN CORPORATION, et al., defendants and third-party plaintiffs, Respondents,**

**v.**

**Axel Gene LARSON, Third–Party Defendant.**

**No. C5–88–1405.**

Court of Appeals of Minnesota.

Jan. 31, 1989.

Review Denied March 29, 1989.

See also, 418 N.W.2d 723.

Thomas W. Wexler, Peterson, Engberg & Peterson, Minneapolis, for appellant.

Peter G. VanBergen, Mark A. Kleinschmidt Cousineau, McGuire, Shaughnessy & Anderson, Minneapolis, for respondents Quadna Mountain Corp., MN Ins. Guarantee Agency and Ray Phillip Spolarich.

Ed Matonich, Matonich and Persson, Hibbing, for third-party defendant.

Heard, considered and decided by FORSBERG, P.J., and CRIPPEN and NORTON, JJ.

## OPINION

NORTON, Judge.

Appellant United Steelworkers of America, Local 6115 (Steelworkers) challenges

the trial court's grant of summary judgment based on circular indemnity. Respondent Quadna Mountain Corporation (Quadna) noticed review of its alternative basis for summary judgment: the ineffectiveness of a settlement between the parties. We affirm.

## FACTS

Third-party defendant Axel Larson (Larson) sustained serious personal injuries when his motorcycle collided with a van owned by Quadna and driven by its employee, Ray Spolarich, on August 17, 1978.

In early 1979, Larson filed a workers' compensation claim against the Steelworkers. Later in 1979, Mr. and Mrs. Larson settled a suit with Quadna based on the incident. In return for a cash award, the Larsons agreed to release and discharge Quadna and its insurers, in addition to indemnifying those entities in the event of future claims based on the incident. The Steelworkers were not ajudicated as Larson's employer until 1981, and therefore were not given notice of the settlement.

In 1982, Steelworkers commenced a subrogation suit under Minn.Stat. § 176.061 (1978) against Quadna, Insurance Company of North America (INA) (Quadna's primary insurer), and Spolarich. Quadna, INA and Spolarich successfully moved to have Larson named as a third-party defendant, based upon Larson's indemnification agreement. Quadna's excess insurer, Midland Insurance Company (Midland), was not involved in the court action at that time.

In June 1987, all parties except Midland entered into a partial release and settlement. At that time, the Special Compensation Fund of the Department of Labor and Industry (Superfund) of the state was made a party plaintiff in the action, due to the Steelworkers' uninsured status. Appellant Steelworkers and the Superfund agreed to indemnify respondents Quadna and INA, and employee Larson. All current suits were dismissed with prejudice; the only action allowed to survive was a suit by appellant against Quadna for any amount recoverable by Quadna's excess insurer, Midland. The settlement was based

on a similar procedure used in Wisconsin in *Loy v. Bunderson*, 107 Wis.2d 400, 320 N.W.2d 175 (1982).

In early 1988, Quadna's motion to again join Larson as a third-party defendant was granted. A short time later, the trial court granted respondents' motion for summary judgment. In its memorandum accompanying the order, the court noted that it had twice previously commented on the circular indemnity problem. This appeal followed.

## ISSUES

1. Is Larson's agreement to indemnify Quadna and its insurers unenforceable because it contravenes Minn.Stat. § 176.061, subds. 5 and 6, or violates public policy?

2. Did the trial court erroneously interpret the parties' agreement?

## ANALYSIS

### I.

Appellant alleges the 1979 settlement agreement between Larson and Quadna and its insurers violates public policy and the legislative intent of Minn.Stat. § 176.061, subds. 5 and 6.

1. *Public Policy.*

Appellant Steelworkers contends the Larson/Quadna indemnification agreement interferes with its subrogation action against Quadna in two respects. First, appellant alleges that the agreement is against public policy because it compromises the Steelworkers' subrogation claim.

Generally, an employee who receives workers' compensation benefits may settle with a third-party tortfeasor without giving notice to his employer, but the settlement does not affect the right of the employer to proceed against the third-party as if such settlement had not been made. *Lang v. William Brothers Boiler & Manufacturing Co.*, 250 Minn. 521, 531, 85 N.W. 2d 412, 419 (1957). If a contract transgresses law or public policy, it is void; but if it does neither, parties are within their rights, and the interpretation given to the contract should not be arbitrary and should

be construed so that it accomplishes its stated purpose. *Independent School District No. 877 v. Loberg Plumbing & Heating Co.*, 266 Minn. 426, 434, 123 N.W.2d 793, 799 (1963). The legislature may set the public policy of the state through statute. *Giacomo v. State Farm Mutual Automobile Insurance Co.*, 203 Minn. 185, 192, 280 N.W. 653, 657 (1938). In all cases where contracts are claimed to be void as against public policy, it matters not that any particular contract is free from any taint of actual fraud, oppression or corruption. *Pye v. Grunert*, 201 Minn. 191, 193–94, 275 N.W. 615, 616 (1937). The power of courts to declare a contract void for being in contravention of sound public policy is a very delicate power and, like the power to declare a statute unconstitutional, should be exercised only in cases free from doubt. *Hart v. Bell*, 222 Minn. 69, 76, 23 N.W.2d 375, 379 (1946).

■ While we question the desirability of a clause requiring an employee to reimburse his tortfeasor in this context, we do not express an opinion as to the legality of the clause, and instead find that appellant's subrogation interest was not jeopardized by the clause. Larson's agreement with Quadna and its insurers in no way affected the Steelworkers' subrogation rights. Appellant was free to file a subrogation suit against Quadna and, in fact, did so. Appellant's claim against Quadna for any of Midland's excess insurance benefits was dismissed due to appellant's own actions in its 1987 settlement. There, *with knowledge of Larson's previous agreement*, appellant agreed to indemnify Larson, thus creating the circular indemnity. Appellant received the remainder of INA's policy limits in return for the agreement, and participated in and was well represented at the settlement conference; it has therefore waived any right to complain of the Larson/Quadna agreement.

■ Appellant's claim that the trial court erred in allowing Quadna to serve a second third-party complaint against Larson is not dispositive. Midland was not foreclosed from asserting the agreement, even if Quadna had no right to reassert the indemnification agreement. Midland did not authorize, nor was it a party to the 1987 settlement, and therefore, could not be precluded from asserting the Larson indemnification agreement that runs in its favor and completes the final chain in the circularity.

■ For its second allegation, appellant claims the Larson/Quadna agreement violates public policy because it encourages Larson to deny appellant his assistance in the subrogation suit, and to lie about how the accident occurred.

The problem at this time appears moot because appellant agreed to indemnify Larson, and therefore there is no incentive remaining. Before appellant indemnified Larson, its claim appears to be accurate. However, an employee often lacks enthusiasm in an ordinary subrogation claim. In that context, the employee has already settled and received at least a legal promise for a future sum, therefore an employee's lack of interest is not unusual. In this case, the facts surrounding the accident are hardly disputed. As the trial court found, Larson could have been impeached effectively had he lied about the circumstances.

2. *Minn.Stat. § 176.061, subds. 5 and 6.*

■ Appellant maintains the Larson indemnification agreement contravenes the legislative intent of Minn.Stat. § 176.061, subds. 5 and 6 (1978), and causes the loss of workers' compensation rights. As to subdivision 6, appellant contends that due to the indemnification agreement here, and similar agreements in other cases in the future, employees will not receive their statutory share of a settlement. The statute provides in part:

The proceeds * * * shall be divided as follows:

(a) After deducting the reasonable cost of collection, including but not limited to attorneys fees * * * then

(b) One-third of the remainder shall in any event be paid to the injured employee * * * without being subject to any right of subrogation.

Minn.Stat. § 176.061, subd. 6. As appellant notes, the clear intent of the statute is

to ensure that the employee retains one-third of any settlement. The limitation, however, does not apply to damages which are not recoverable under workers' compensation law, and therefore an employer/carrier may maintain claims against a third-party tortfeasor. *Sargent v. Johnson*, 323 N.W.2d 767, 770 (Minn.1982). By the statute's terms, if any part of an employer's subrogation claim dips into the employee's workers' compensation one-third share, the subrogation claim is extinguished. Accordingly, appellant's fears are unfounded.

Subdivision 5 of Minn.Stat. § 176.061 outlines the employer's subrogation rights. Appellant's claim in this area is nearly identical to its denial of assistance claim above, and we find that analysis controlling in this area also.

## II.

Appellant contends the trial court erred in interpreting the 1987 settlement. Specifically, appellant maintains that the court erred in finding circular indemnity with respect to Spolarich. Although it is true that Spolarich was not named in the Larson indemnification agreement, appellant's claim is not assisted. In the 1987 settlement, *appellant* agreed to indemnify Spolarich, therefore Spolarich need not rely on Larson's 1979 agreement for his successful circularity argument.

## DECISION

The trial court properly granted summary judgment on the basis of circular indemnity. The Steelworkers were not adversely affected by the indemnification agreement between Quadna and its insurers, and Larson; in any event, the Steelworkers waived any objection to the agreement by accepting payment and agreeing to indemnify most parties in 1987. Because of this decision, we decline to reach the alternative ground for summary judgment noticed for review by respondent Quadna.

AFFIRMED.