Filed 5/19/23  Korman v. United Language Group CA2/7

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| YEUN KORMAN et al.,<br><br>    Plaintiffs and Appellants,<br><br>    v.<br><br>UNITED LANGUAGE GROUP, INC., et al.,<br><br>    Defendants and<br>    Respondents. | B313271<br><br>(Los Angeles County<br>Super. Ct. No. 19BBCV00538) |

APPEAL from a judgment of the Superior Court of Los Angeles County, William D. Stewart, Judge.  Dismissed in part and affirmed in part.  ORIGINAL PROCEEDING in mandate. Petition denied.

Prospera Law, Albert T. Liou and Victor T. Fu for Plaintiffs and Appellants.

McBreen & Senior, David A. Senior and Ann K. Tria; Fredrikson & Byron, Terrence J. Fleming, Christopher D. Pham and Rachel L. Dougherty for Defendants and Respondents.

# INTRODUCTION

Yeun Korman, Yong Korman, Claudio Federico, Alen Keshishyan, and Eugene Du (the Korman parties) founded a company called Language Select, LLC. United Language Group, Inc. (ULG) purchased Language Select from the Korman parties for $65 million: $60 million in cash and a $5 million promissory note. This lawsuit is about the $5 million note.

To obtain the funds for the purchase, ULG borrowed money from two senior lenders. The senior lenders, in turn, required the Korman parties to sign subordination agreements to ensure ULG paid back the senior lenders before ULG paid the $5 million it owed the Korman parties.

Among the many terms of the promissory note and subordination agreements were two in particular that ultimately gave rise to the parties' dispute. First, ULG could not pay the Korman parties any principal owed on the $5 million promissory note until ULG repaid all of the debt it owed to the senior lenders (the Senior Debt). Second, ULG in the meantime had to make quarterly, interest-only payments on the promissory note to the Korman parties; however, ULG could only make interest payments if it was not in default on its borrowing obligations to the senior lenders (a Senior Default).

ULG made some of the interest payments on the $5 million promissory note, but eventually stopped. The Korman parties filed a lawsuit against ULG; its holding company, United Language Group Holdings, LLC; and six of ULG's officers and directors (Douglas Bergeron, Kristen Giovanis, Scott M. Honour, Peter R. Offenhauser, Michael Furey, and Marcy A. Haymaker) (collectively, the ULG parties). That lawsuit settled. But after ULG again stopped making interest payments on the promissory

2

note, the Korman parties filed this action, asserting a cause of action against ULG and Language Select for breach of the promissory note and a cause of action against all of the ULG parties for breach of the settlement agreement on the theory the ULG parties agreed to pay back the promissory note as part of the settlement. The Korman parties also claimed the ULG parties breached the settlement agreement by filing it in court.

The ULG parties and Language Select moved for summary adjudication on each cause of action and for summary judgment. On the Korman parties' cause of action for breach of the promissory note, they argued they were entitled to judgment as a matter of law for two reasons. First, they argued that, because it was undisputed ULG had not paid off the Senior Debt it owed to the senior lenders, the subordination agreements precluded ULG from making any principal payments. Second, they argued that, because it was undisputed there was a Senior Default on ULG's obligations to the senior lenders, the subordination agreements precluded ULG from making interest payments on the promissory note. On the Korman parties' cause of action for breach of the settlement agreement, the ULG parties argued there was no breach of the settlement agreement because the settlement agreement did not modify the terms governing payment of the promissory note.

The trial court granted the motion and subsequently entered judgment on the Korman parties' complaint, although not on a cross-complaint ULG and Language Select had filed against the Korman parties (more on that later). On the cause of action for breach of the promissory note, the court ruled there was no breach because it was undisputed ULG had not paid off the Senior Debt. The Korman parties contend the subordination

3

agreements were no longer binding because, after the Korman parties and ULG's senior lenders entered into the subordination agreements, ULG borrowed money from a new lender, which ULG used to pay off its debt to one of the two senior lenders and to acquire a new company. As we explain, the Korman parties are incorrect; ULG had not paid off the Senior Debt to the other senior lender, and the subordination agreements permitted ULG to incur additional debt. In addition, ULG and Language Select met their burden to show there was a Senior Default on ULG's obligations to that same senior lender, and the Korman parties did not submit sufficient evidence to create a triable issue of material fact.

On the cause of action for breach of the settlement agreement, the trial court agreed with the ULG parties that there was no breach of that agreement. We conclude that the Korman parties' claim for breach of the settlement agreement based on a breach of the promissory note fails because there was no breach of the latter agreement and that the ULG parties' filing of the settlement agreement did not cause the Korman parties any damages. Therefore, we affirm the judgment in favor of those ULG parties for whom there is an appealable judgment. We dismiss the appeal from the judgment in favor of ULG and Language Select, for whom there is no appealable judgment; treat that part of the appeal as a petition for writ of mandate; and deny the petition.

**FACTUAL AND PROCEDURAL BACKGROUND**

A.      *The Korman Parties Sell Language Select to ULG and United Language Group Holdings*

The Korman parties founded Language Select, which provides language interpretation services, in 2009.  In 2016 they sold the company to ULG and its holding company, United Language Group Holdings, for $60 million in cash, a $5 million promissory note, and equity in United Language Group Holdings. The promissory note provided that interest on outstanding principal would accrue annually at 6 percent and that ULG and Language Select would make quarterly interest-only payments on the note.[1]  The promissory note provided that, if ULG and Language Select did not make a required interest payment, they would be in default, after which any unpaid principal or interest would "become immediately due and payable."

B.      *The Korman Parties Enter into Subordination Agreements with the ULG's Senior Lenders*

To obtain funding for the purchase, the ULG entities[2] borrowed money from two lenders: Bell Bank and Yukon Capital Partners II, L.P.  Both Bell Bank and Yukon required the

---

[1]      The promissory note specifically listed only Language Select as the promisor, but the Korman parties alleged in their operative complaint that both ULG and Language Select were responsible for the payments   Because the issue is not relevant to the appeal, we assume, without deciding, ULG and Language Select were jointly obligated to make payments on the note.

[2]      We refer to ULG, United Language Group Holdings, and Language Select collectively as the ULG entities.

Korman parties to enter into subordination agreements, which included the following terms:

"The payment of all of the [promissory note] is hereby expressly subordinated to the payment in full of the Senior Debt to the extent and in the manner hereinafter set forth in this Agreement.  Until the Senior Debt has been Paid in Full, [the Korman parties] shall not demand, receive or accept any payment in respect of the [promissory note], . . .; *provided,* that so long as no Senior Default has occurred and is continuing or would occur as a result of or immediately following any such payment . . . , [Language Select and ULG] may pay and the [Korman parties] may accept regularly scheduled payments of accrued interest (but not principal) on the [promissory note] . . . on the dates on which they are required to be paid under the [promissory note]."

The subordination agreements defined the terms "Senior Debt" and "Senior Default."  They defined Senior Debt as "each and every debt, liability and obligation of every type and description which [ULG and Language Select] may now or at any time hereafter owe to [Bell Bank or Yukon] under the Senior Credit Documents, whether such debt, liability or obligation now exists or is hereafter created or incurred, . . . all renewals, extensions, modifications and refinancings thereof and any notes issued in whole or partial substitution for any notes issued in connection therewith."  They defined Senior Default as "a Default or Event of Default" under the ULG entities' lending agreements with Bell Bank and Yukon.

When the Korman parties and Bell Bank and Yukon entered the subordination agreements, the ULG entities' lending agreement with Yukon was also subordinate to their lending agreement with Bell Bank.  The Bell Bank-Yukon subordination agreement generally prohibited the ULG entities from making

6

payments to Yukon before paying off their debt to Bell Bank, while permitting certain payments.

### C. *After the Sale, the Parties Sue Each Other and Settle*

After the sale ULG and United Language Group Holdings filed a complaint against the Korman parties for fraud and breach of contract arising from the sale. The Korman parties filed a cross-complaint against the ULG parties for breach of the promissory note, alleging the ULG parties failed to make quarterly interest payments required under the note. The Korman parties and the ULG parties ultimately executed a settlement agreement resolving that lawsuit.[3]

### D. *ULG Again Stops Making Interest Payments on the Note, and the Korman Parties File This Action*

After the parties settled the prior action, ULG made two interest payments on the note. ULG, however, did not make the third scheduled interest payment due in April 2019, believing the ULG entities "were in default of their senior lending agreements or, at the very least . . . would be in default immediately after paying the Seller Note." In response, the Korman parties filed this action.

In their operative complaint, the Korman parties asserted a cause of action against ULG and Language Select for breach of the promissory note and a cause of action against the ULG parties for breach of the settlement agreement. In support of their first cause of action, the Korman parties alleged "ULG and Language Select materially breached the [promissory note], by failing to remit timely payment of interest in the amount of

---

[3]     Language Select was not a party to that lawsuit.

7

$75,000.00 . . . without justification." Therefore, the Korman parties claimed, "an Event of Default has occurred . . . such that the entire outstanding principal amount of the [note] ($5,000,000.00), as well as all accrued but unpaid interest, is immediately due and payable . . . ."

In support of their second cause of action, the Korman parties alleged the ULG parties "breached the Settlement Agreement, without justification, by allowing and/or causing ULG and Language Select to default on the [promissory note] . . . ." The Korman parties also alleged that the settlement agreement was confidential, that the parties agreed they "would disclose only those terms needed" if necessary to enforce the agreement, and that the ULG parties breached the confidentiality provision by filing the entire settlement agreement in the lawsuit without the Korman parties' consent.[4]

Finally, the Korman parties asserted a cause of action against the ULG parties and Language Select for declaratory relief. The Korman parties alleged there was a dispute whether the promissory note was "in default and . . . payable by Defendants" and whether "ULG's alleged noncompliance with certain quarterly financial covenants contained in its senior debt agreement and ULG's alleged senior defaults" were "valid reasons to avoid making payments" on the promissory note. The Korman parties requested various declarations that there was no default and that the ULG parties and Language Select had to pay back the note.

---

[4] The ULG parties filed the settlement agreement when they demurred to the Korman parties' initial complaint. The Korman parties filed an amended complaint that included the breach-of-confidentiality claim.

E.     *The ULG Parties and Language Select File a Motion*
       *for Summary Adjudication on Each Cause of Action*
       *and for Summary Judgment*

The ULG parties and Language Select filed a motion for summary adjudication on each cause of action and for summary judgment.  On the first cause of action for breach of the promissory note, ULG and Language Select argued there were "two unmet conditions precedent that bar [the Korman parties'] breach of contract cause of action: (1) at all relevant times, a Senior Default had occurred and was continuing or would occur as a result of or immediately following any payment of interest on the Seller Note, and (2) the Senior Debt has not been paid in full."

To show that a Senior Default had occurred and was continuing, ULG and Language Select attached the ULG entities' senior lending agreement with Yukon.[5]  Under that agreement, ULG was required to meet certain financial covenants each fiscal quarter.  The agreement defined a failure "to perform or observe" a financial covenant as an "Event of Default."

ULG and Language Select submitted a declaration from Giovanis, ULG's chief executive officer, who stated that, "[a]t the end of March 2019, the ULG Entities had an unusually large amount of unpaid collections and were facing liquidity challenges."  She said that, after reviewing ULG's financial information, she and other company management "determined

_____

[5]     ULG and Language Select also attached the ULG entities' lending agreement with Crescent Direct Lending, LLC—a new lender the ULG entities borrowed money from to pay off the debt owed to Bell Bank.  In their motion, however, ULG and Language Select focused on the lending agreement with Yukon.

9

that it was very likely the ULG Entities would not meet the required covenants . . . ." Therefore, she explained, ULG did not make the interest payment under the promissory note that was due in April 2019. Giovanis stated: "Over the course of the next month, the ULG Entities collected documents and information reflecting collections, revenues, and expenses for the quarter . . . and confirmed their covenant noncompliance at the end of April."

Giovanis further stated that, at all times during 2019 and 2020, the ULG Entities did not comply with "the financial covenants necessary to make interest payments on the [promissory] Note." ULG and Language Select submitted compliance certificates prepared by ULG's chief financial officer for each quarter of 2019 and 2020 that reflected ULG did not satisfy financial covenants required under its lending agreement with Yukon to make payments on the promissory note.

To show ULG had not paid off the Senior Debt to Yukon, ULG and Language Select relied on Giovanis's declaration, as well as a declaration by Andrew Walker, an officer of Yukon. Walker and Giovanis stated that the Yukon lending agreement had "not been terminated" and that debt incurred under the agreement remained outstanding.

On the cause of action for breach of the settlement agreement, the ULG parties argued that the settlement agreement "did not create an independent obligation on behalf of the signatories" to pay the note and that the note "remain[ed] payable" under the same terms and conditions, including those imposed by the subordination agreements. The ULG parties cited a provision in the settlement agreement stating the promissory note "remains due and payable in full, according to its terms" and "subject to all applicable subordination agreements related to the" note. Therefore, the ULG parties contended, the

10

claim failed for the same reasons the breach-of-promissory-note claims failed.

To defeat the Korman parties' other claim for breach of the settlement agreement, the ULG parties argued the Korman parties "have not suffered any damages as a result of the filing of the Settlement Agreement." The ULG parties submitted the Korman parties' response to a special interrogatory asking them to describe their damages from the ULG parties' public filing of the settlement agreement. In response, the Korman parties stated they were seeking damages, but did not provide any facts explaining what those damages were or how they were calculated. Finally, the ULG parties and Language Select argued the Korman parties' cause of action for declaratory relief failed for the same reasons as their cause of action for breach of the promissory note.

F. *The Korman Parties Oppose the Motion*

In opposition to the motion for summary adjudication on the cause of action for breach of the promissory note, the Korman parties primarily argued there was a triable issue of material fact regarding whether the subordination agreements were still valid and binding. The Korman parties submitted evidence that in 2018 the ULG entities borrowed money from a new lender, Crescent Direct Lending, LLC, to acquire a company called VIA, Inc. and to pay off the senior debt owed to Bell Bank. After the VIA acquisition, the ULG entities owed Crescent over $20 million more than they had owed Bell Bank before the acquisition. According to the Korman parties, there was a triable issue of material fact regarding whether the new loan "was a permitted 'refinancing' under the Bell Bank Subordination Agreement [and] the Yukon Subordination Agreement" and therefore whether the

11

subordination agreements were still binding. The Korman parties also contended ULG and Language Select did not show there was a Senior Default, objecting to the admissibility of the statements by Giovanis and Walker that the ULG entities had not met the financial covenants necessary to make interest payments on the promissory note. The Korman parties argued the statements were hearsay, improper legal conclusions, conclusory, and lacked foundation.

In opposition to the motion for summary adjudication on the second cause of action, the Korman parties argued the ULG parties "agreed to ensure that the [promissory note] would be paid according to its terms," but did not cite any terms of the settlement agreement that supported their argument or submit any extrinsic evidence. The Korman parties also did not submit any evidence they suffered damages from the ULG parties publicly filing the settlement agreement.

G. *The Trial Court Grants the Motion*

The trial court granted the motion for summary adjudication on each of the Korman parties' causes of action and the motion for summary judgment. On the cause of action for breach of the promissory note, the court addressed only the Korman parties' argument the subordination agreements were no longer binding after the ULG entities borrowed additional money to acquire VIA. The court ruled that "[t]he terms of the subordination agreements . . . expressly allow[ed] [Bell Bank and Yukon] to increase the amount of the Senior Debt" and that the Korman parties had not created a triable issue of material fact regarding whether "the subordination agreements were no longer in effect" after the acquisition. The trial court did not address whether, even if the subordination agreements were still binding,

12

ULG and Language Select met their burden to show they could not make interest payments on the promissory note because there was a Senior Default. The court, however, did overrule the Korman parties' objections to the evidence submitted by ULG and Language Select showing there was a Senior Default.

On the cause of action for breach of the settlement agreement, the court agreed with the ULG parties that "the plain language of the Settlement Agreement . . . create[ed] no further obligation to make payments" on the note beyond the note's original terms and ruled that there was no breach of the settlement agreement for the same reason there was no breach of the promissory note. The court did not address the Korman parties' claim the ULG parties breached the agreement by publicly filing it. On the cause of action for declaratory relief, the court ruled there were "no remaining issues" in the case. The trial court entered judgment in favor of the ULG parties and Language Select, and the Korman parties timely appealed from the judgment.

## DISCUSSION

A. *We Treat the Appeal from the Judgment in Favor of ULG and Language Select as a Petition for Writ of Mandate*

When the court entered judgment, a cross-complaint by ULG and Language Select against the Korman parties was still pending. ULG and Language Select asserted a cause of action for breach of the promissory note, alleging the Korman parties breached the note by "demanding payment" of the promissory note, notwithstanding that "Senior Defaults exist" and that "the Senior Debt has not been paid in full." ULG and Language Select

13

sought as damages their attorneys' fees incurred in defending this action.  After entering judgment on the complaint the trial court, based on the parties' stipulation, (1) stayed the cross-complaint pending resolution of this appeal and (2) ordered that, if this court affirmed the judgment, the court would resolve the cross-complaint by way of a motion for attorneys' fees.

Generally, where "a complaint and cross-complaint involving the same parties have been filed, there is no final, appealable judgment until both have been resolved."  (*ECC Construction, Inc. v. Oak Park Calabasas Homeowners Assn.* (2004) 122 Cal.App.4th 994, 1002; see *Westamerica Bank v. MGB Industries, Inc.* (2007) 158 Cal.App.4th 109, 132; *American Alternative Energy Partners II v. Windridge, Inc.* (1996) 42 Cal.App.4th 551, 556-557.)  That the trial court agreed to resolve the cross-complaint on a motion for attorneys' fees, rather than a trial, does not change the facts that the cross-complaint remains pending and that there is no final judgment between the parties to the cross-complaint.  (See *Kurwa v. Kislinger* (2013) 57 Cal.4th 1097, 1107 ["The one final judgment rule does not permit parties 'to separate [their] causes of action into two compartments for separate appellate treatment at different points in time.'"]; *Morehart v. County of Santa Barbara* (1994) 7 Cal.4th 725, 743 ["an appeal cannot be taken from a judgment that fails to complete the disposition of all the causes of action between the parties even if the causes of action disposed of by the judgment have been ordered to be tried separately, or may be characterized as 'separate and independent' from those remaining"].)

We asked the parties to submit supplemental briefing on whether this court "should dismiss all or part of the appeal because causes of action remain pending between some of the

14

parties to the judgment." In response, the Korman parties asked us to treat part of the appeal as a petition for writ of mandate.[6] We agree that, under the unusual circumstances of this case, it is appropriate to do so.

The briefs and the record satisfy the requirements for an original proceeding in mandate, and the superior court has not indicated it wants to participate in these proceedings. (See *Morehart v. County of Santa Barbara*, *supra*, 7 Cal.4th at pp. 745-746 [the "functional equivalents of any necessary verifications [citation] are supplied . . . by the certifications of the clerk's transcript by the clerk of the trial court and of the reporter's transcript by the clerk and the reporter"].) Deferring resolution of the issues in this appeal until after resolution of the cross-complaint would not advance the interest of judicial economy: If we dismissed part of the appeal, the parties, after briefly litigating the issue of attorneys' fees, undoubtedly would appeal again and present almost the exact same arguments. (See *id.* at p. 746.) Indeed, most of the briefing in this appeal would be recyclable.

In addition, because there are no causes of action pending between the Korman parties and the ULG parties who did not file the cross-complaint (i.e., United Language Group Holdings and the six ULG officers and directors), there is a final, appealable judgment for those parties. The Korman parties asserted their causes of action for breach of the settlement agreement and declaratory relief against some of the ULG parties who have pending cross-claims and some who do not; affirming or

---

[6] The ULG parties and Language Select took no position on whether we should hear any part of the appeal.

15

reversing the orders granting summary adjudication on those causes of action would not accomplish much and would preclude some of the parties from participating in the appeal. (See *County of Orange v. Superior Court* (2007) 155 Cal.App.4th 1253, 1257 [exercising discretion to treat an appeal as a petition for writ of mandate where "[t]he merits of the issue have been fully briefed by the parties" and "failure to consider the issue at this juncture would be a dereliction of our duties as a reviewing court"].[7] And no party claims it will suffer any prejudice if we address the merits of the parties' dispute. (See *People v. AWI Builders, Inc.* (2022) 80 Cal.App.5th 248, 266.)

Moreover, ULG and Language Select's cross-complaint depends on the merits underlying the Korman parties' first and third causes of action: whether the relevant agreements required ULG and Language Select to pay principal or interest on the promissory note. Requiring the trial court to proceed without the benefit of a decision on these issues would not further resolution of this litigation. (See *Olson v. Cory* (1984) 35 Cal.3d 390, 401 ["[t]o dismiss the appeal rather than exercising our power to reach the merits through a mandate proceeding would, under the unusual circumstances before us, be "'unnecessarily dilatory and circuitous'""]; *ViaView, Inc. v. Retzlaff* (2016) 1 Cal.App.5th 198,

---

[7] Similarly, the issues relating to whether the court erred in granting summary adjudication on the cause of action for breach of the settlement agreement and the cause of action for declaratory relief (asserted against all the ULG parties) overlap with the issues relating to whether the court erred in granting summary adjudication on the cause of action for breach of the promissory note (asserted against only ULG and Language Select).

16

213 ["treating the appeal as a petition for writ of mandate avoids piecemeal litigation and further delay, and allows for an orderly examination of the issues presented"].)

### B.    *Applicable Law and Standard of Review*

"A court may grant a motion for summary judgment only when all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (*Fajardo v. Dailey* (2022) 85 Cal.App.5th 221, 225, internal quotation marks omitted; see Code Civ. Proc., § 437c, subd. (c);[8] *Regents of University of California v. Superior Court* (2018) 4 Cal.5th 607, 618; *Randle v. Farmers New World Life Ins. Co.* (2022) 85 Cal.App.5th 53, 61.) "A defendant moving for summary judgment has the initial burden of presenting evidence that a cause of action lacks merit because the plaintiff cannot establish an element of the cause of action or there is a complete defense." (*Sabetian v. Exxon Mobil Corp.* (2020) 57 Cal.App.5th 1054, 1068; see § 437c, subd. (p)(2); *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850 (*Aguilar*); *Randle*, at p. 61.)

"Where, as here, the defendant moves for summary judgment on the grounds that one or more elements of the plaintiff's [cause of action] cannot be established, the defendant must present evidence that either 'conclusively negate[s] an element of the plaintiff's cause of action' or 'show[s] that the plaintiff does not possess, and cannot reasonably obtain,' evidence needed to establish an element . . . ." (*White v. Smule, Inc.* (2022) 75 Cal.App.5th 346, 354; see *Aguilar*, *supra*,

---

[8]    Undesignated statutory references are to the Code of Civil Procedure.

25 Cal.4th at pp. 853-855; *Doe v. Roman Catholic Archbishop of Los Angeles* (2021) 70 Cal.App.5th 657, 668.) "'Only after the defendant carries that initial burden does the burden shift to the plaintiff "to show that a triable issue of one or more material facts exists as to the cause of action . . . ."'" (*Fajardo, supra*, 85 Cal.App.5th at pp. 225-226; see § 437c, subd. (p)(2); *Aguilar*, at pp. 849-850; *Roman Catholic Archbishop of Los Angeles*, at pp. 668-669.) "There is a triable issue of material fact if, and only if, the evidence would allow a reasonable trier of fact to find the underlying fact in favor of the party opposing the motion in accordance with the applicable standard of proof." (*Aguilar*, at p. 850; see *Lemm v. Ecolab Inc.* (2023) 87 Cal.App.5th 159, 169.)

"'""'We review the trial court's decision de novo, considering all the evidence set forth in the moving and opposing papers except that to which objections were made and sustained.'" [Citation.] We liberally construe the evidence in support of the party opposing summary judgment and resolve doubts concerning the evidence in favor of that party."'" (*Hampton v. County of San Diego* (2015) 62 Cal.4th 340, 347; see *Lemm v. Ecolab Inc.*, *supra*, 87 Cal.App.5th at pp. 168-169.)

      C.    *The Trial Court Did Not Err in Granting the Motion for Summary Adjudication on the Cause of Action for Breach of the Promissory Note*

Under Minnesota law,[9] "[t]he elements of a breach of contract claim are '(1) formation of a contract, (2) performance

---

[9]    The subordination agreements contain a Minnesota choice-of-law provision that states: "THE VALIDITY, CONSTRUCTION AND ENFORCEABILITY OF THIS

18

by plaintiff of any conditions precedent to his right to demand performance by the defendant, and (3) breach of the contract by defendant.'" (*Lyon Financial Services, Inc. v. Illinois Paper and Copier Co.* (Minn. 2014) 848 N.W.2d 539, 543; see *Park Nicollet Clinic v. Hamann* (Minn. 2011) 808 N.W.2d 828, 833; *Glacier Park Iron Ore Properties, LLC v. United States Steel Corp.* (Minn.Ct.App. 2020) 948 N.W.2d 686, 697.) "A breach of contract is a failure, without legal excuse, to perform any promise that forms the whole or part of the contract." (*Lyon*, at p. 543; see *Moore v. City of New Brighton* (Minn.Ct.App. 2019) 932 N.W.2d 317, 324; see also *Park*, at p. 837 ["Failure to perform under a contract when performance is due establishes an immediate breach."].)

ULG and Language Select made two relevant promises in the promissory note: first, to make quarterly, interest-only payments on the note; second, to pay all outstanding principal on the note if they failed to timely make a required interest payment. The subordination agreements, however, conditioned these promises. (See *Crossroad Church of Prior Lake MN v. County of Dakota* (Minn. 2011) 800 N.W.2d 608, 615 ["Under general contract law, unfulfilled conditions prevent enforcement of a contract."]; *R.A., Inc. v. Anheuser-Bsuch, Inc.* (Minn.Ct.App. 1996) 556 N.W.2d 567, 570 ["'A conditional promise prevents a party from acquiring any rights under the contract unless those conditions occur."].) As discussed, they stated: "Until the Senior

AGREEMENT SHALL BE GOVERNED BY THE INTERNAL LAWS OF THE STATE OF MINNESOTA, WITHOUT GIVING EFFECT TO CONFLICT OF LAWS PRINCIPLES THEREOF." ULG and Language Select argue Minnesota law governs the scope and enforceability of the agreements; the Korman parties do not dispute that Minnesota law applies.

Debt has been Paid in Full, [the Korman parties] shall not demand, receive or accept any payment in respect of the [promissory note], . . .; *provided*, that so long as no Senior Default has occurred and is continuing or would occur as a result of or immediately following any such payment . . . , [Language Select and ULG] may pay and the [Korman parties] may accept regularly scheduled payments of accrued interest. . . ." Thus, ULG and Language Select's first promise to make interest-only payments was conditioned on the absence of a Senior Default (or a Senior Default resulting from an interest payment); if a Senior Default had occurred or would occur, ULG and Language Select did not have to perform. And ULG and Language Select's second promise to pay outstanding principal in the event they failed to make a required payment was conditioned on the absence of the Senior Debt; i.e., the ULG entities having paid off the Senior Debt.

The trial court ruled ULG and Language Select met their burden to show the second condition that triggered their duty to pay—that the ULG entities had paid off the Senior Debt—did not exist. The court, however, did not rule on whether ULG and Language Select met their burden on the first condition: the absence of a Senior Default. ULG and Language Select contend that they met their burden to show both conditions did not exist and that the Korman parties failed to raise any triable issues of fact. ULG and Language Select are correct.

1. *The Undisputed Facts Showed ULG and Language Select Had Not Paid Off the Senior Debt*

As discussed, both Giovanis (ULG's chief executive officer) and Walker (an officer of Yukon) submitted declarations stating

20

ULG had not paid the balance of the outstanding Senior Debt owed to Yukon. No more was required for ULG and Language Select to meet their burden on summary judgment. (See *Aguilar*, *supra*, 25 Cal.4th at p. 851 ["A prima facie showing is one that is sufficient to support the position of the party in question. [Citation.] No more is called for."].) Indeed, the Korman parties do not dispute the ULG entities have not paid off the Senior Debt owed to Yukon.[10] Instead, they offer several reasons why, in their opinion, the Yukon subordination agreements are no longer enforceable (which, if correct, would require ULG and Language Select to make principal and interest payments on the note regardless of the two conditions). The Korman parties' reasons do not withstand scrutiny.

### 2. *The Yukon Subordination Agreement Is Enforceable*

The Korman parties first contend they "never agreed to subordinate" the promissory note to a 2018 amended lending

---

[10] The parties do dispute whether the ULG entities paid off the Senior Debt owed to Bell Bank under the Korman parties' separate subordination agreement with Bell Bank. As discussed, the ULG entities obtained funding from a new lender, Crescent, in part to pay off the debt owed to Bell Bank. We assume, without deciding, the ULG entities paid off the Senior Debt under the Bell Bank subordination agreement. As the ULG entities and Language Select contend, however, the promissory note stated it was subject to both the Bell Bank subordination agreement and the Yukon subordination agreement. Therefore, even if the ULG entities paid off the Senior Debt owed to Bell Bank, ULG and Language Select could not make any payments on the promissory note if prohibited by the Yukon subordination agreement.

21

agreement the ULG entities and Yukon entered into after the ULG entities acquired VIA. The Korman parties are incorrect. The Korman parties' subordination agreement with Yukon stated the "payment of all of the [promissory note] is hereby expressly subordinated to the payment in full of the Senior Debt . . . ." The subordination agreement defined "Senior Debt" as "each and every debt, liability and obligation of every type and description which [the ULG entities] may now or at any time hereafter owe to [Yukon] under the Senior Credit Documents, whether such debt, liability or obligation now exists *or is hereafter created or incurred* . . . ." (Italics added.) In addition, the subordination agreement defined "Senior Credit Documents" not only as the existing lending agreement between the ULG entities and Yukon, but also as "all other loan documents or note documents . . . now *or hereafter existing or executed* in connection with or related to the Senior Debt, as the same may be amended, supplemented, replaced, refinanced, restated or otherwise modified from time to time." (Italics added.) The language of these provisions in the subordination agreement made clear "Senior Debt" included any new debt or obligation to Yukon the ULG entities incurred and "Senior Credit Documents" included any new lending agreements the ULG entities entered with Yukon. Thus, the Korman parties agreed to subordinate the promissory note to the 2018 lending agreement between the ULG entities and Yukon.

Second, the Korman parties contend they "never agreed to subordinate" the promissory note to "the substantially increased indebtedness resulting from the VIA Acquisition . . . ." Again, they are incorrect. The Korman parties' subordination agreements with both Bell Bank and Yukon provided Bell Bank or Yukon "may, at any time and from time to time, without the consent of or notice to [the Korman parties] and without

22

incurring responsibility to [the Korman parties] . . . *increase or change the amount of the Senior Debt . . . .*" In addition, the Korman parties did not submit any evidence the ULG entities' Senior Debt to *Yukon* increased after the VIA acquisition. The evidence showed that, when the ULG entities acquired VIA, they owed Bell Bank slightly more than $31 million. The ULG entities obtained a $53 million loan from Crescent in part to acquire VIA and in part to pay off the debt owed to Bell Bank. The Korman parties did not show the ULG entities borrowed any additional funds from Yukon when they acquired VIA or when the ULG entities and Yukon executed the 2018 amended lending agreement. As the ULG parties correctly argue, even if the ULG entities increased their debt to Crescent, there was no evidence the ULG entities' Senior Debt to Yukon increased.

Finally, the Korman parties argue the Yukon subordination agreement is not enforceable because the ULG entities and Yukon materially modified the terms of their lending agreement, thereby adversely affecting the Korman parties' rights. The argument, though hard to follow, goes something like this: When the Korman parties entered their subordination agreement with Yukon, the separate subordination agreement between Bell Bank and Yukon—the one that subordinated the ULG entities' lending agreement with Yukon to the ULG entities' lending agreement with Bell Bank—included a provision setting the "Maximum Senior Debt" at $41.8 million. This provision stated that the ULG entities' debt to Yukon (i.e., the Yukon Senior Debt) could be subordinate to no more than $41.8 million of the ULG entities' debt to Bell Bank (i.e., the Bell Bank Senior Debt). After the ULG entities acquired VIA and entered a new lending agreement with Yukon, however, the Yukon Senior Debt, according to the Korman parties, was subordinate to $53 million in debt the

23

ULG entities owed to Crescent.  Citing *Gluskin v. Atlantic Savings & Loan Assn.* (1973) 32 Cal.App.3d 307 (*Gluskin*) and *Citizens Business Bank v. Gevorgian* (2013) 218 Cal.App.4th 602 (*Citizens Business Bank*), the Korman parties contend the new agreements between Crescent, Yukon, and the ULG entities "constituted a material modification" to the Korman parties' subordination agreement with Yukon that "rendered [it] unenforceable."  (See *Gluskin*, at p. 314 [under "public policy which requires protection of subordinating sellers . . . a lender and a borrower may not bilaterally make a material modification in the loan to which [a] seller has subordinated, without the knowledge and consent of the seller to that modification, if the modification materially affects the seller's rights"]; see also *Citizens Business Bank*, at p. 617 [same].)

The problem for the Korman parties is that, even if *Gluskin* and *Citizens Business Bank* are not distinguishable (more on that later), the subordination agreement between the Korman parties and Yukon is governed by Minnesota law, not California law.  The Korman parties do not cite any Minnesota authority similar to *Gluskin* or *Citizens Business Bank* that would prohibit the ULG entities and Yukon from agreeing to subordinate their lending agreement to the ULG entities' agreement with a new lender.  Nor do the Korman parties offer a compelling reason why, even if Minnesota were to adopt a public policy limitation similar to the one described in *Gluskin* and *Citizens Business Bank*, that public policy should apply here.

Instead, the Korman parties state (in their reply brief) only that ULG and Language Select "cite no legal authority to support their conclusion that Minnesota law does not require junior lender notification or consent . . . ."  The Korman parties misunderstand their burden.  Because there is no express

24

limitation in the Korman parties' subordination agreement with Yukon prohibiting the ULG entities and Yukon from agreeing to subordinate the Yukon Senior Debt to any other ULG debt, it was the Korman parties' burden to show the agreements between the ULG entities, Yukon, and Crescent violate public policy in a way that renders the subordination agreement unenforceable. (See *James Quirk Mill. Co. v. Minneapolis & St. L. R. Co.* (Minn. 1906) 107 N.W. 742, 742 ["the party who asserts that a particular contract is against public policy has the burden of proving the same"]; see also *In re Estate of Kinney* (Minn. 2007) 733 N.W.2d 118, 127 [where an agreement is supported by adequate consideration, "[p]lacing the burden of proof on the party challenging the agreement is . . . consistent with general principles of contract law"].) The Korman parties did not meet (or even attempt to meet) that burden.

And *Gluskin* and *Citizens Business Bank* are distinguishable. Neither case involved a situation where the subordinated lender (like the Korman parties) expressly agreed the borrower and senior lenders (like the ULG entities and Yukon and Bell Bank) could increase the amount, and change the payment terms, of the senior debt without notice to the subordinated lender. *Gluskin* and *Citizens Business Bank* involved situations where (1) a seller sold real property to a developer (or developers) for a promissory note and deed of trust on the property; (2) the developer(s) obtained construction loans also secured by deeds of trust on the property; and (3) the seller agreed to subordinate its promissory note and deed of trust to the construction lender's loans and deeds of trust. (See *Citizens Business Bank*, *supra*, 218 Cal.App.4th at pp. 605-607; *Gluskin*, *supra*, 32 Cal.App.3d at pp. 309-310.) In *Gluskin* the construction lender and developer subsequently modified the

25

terms of the construction loans, including shortening the loan term and requiring the developer to make a balloon payment. The developer then defaulted on the loan, and the construction lender purchased the property at a foreclosure sale. (*Gluskin*, at p. 312.) The court in *Gluskin* held the construction lender's deeds of trust no longer had priority over the seller's deeds of trust because the modifications "clearly enhanced the likelihood of a default . . . and the consequent foreclosure." (*Id.* at p. 317.)

In *Citizens Business Bank*, after the seller entered the subordination agreement, the developers and construction lender signed a letter of understanding that "contradicted" the terms of the original construction loan agreement on which the seller had relied. (*Citizens Business Bank*, *supra*, 218 Cal.App.4th at pp. 618-619.) In particular, the letter of understanding permitted the developers to use the purported construction loans to pay off portions of the purchase price, thereby reducing the equity the developers had to invest in the project, and to build the planned units on the property in phases, rather than at one time. (*Id.* at p. 620.) An expert for the seller explained that the "lack of borrower cash equity and phasing were primary factors which cause greater risk in a construction loan." (*Ibid.*) The court in *Citizens Business Bank* held that, because the modifications "materially impaired [the seller]'s security," the construction lender was "not entitled to priority over [the seller's] deed of trust." (*Id.* at p. 618.)

Unlike the agreements in *Gluskin* and *Citizens Business Bank*, the subordination agreements between the Korman parties and Yukon and Bell Bank permitted the very modification to the senior lending agreements that purportedly increased the risk of default on the promissory note—namely, increasing the Senior Debt. (See *North Star Universal, Inc. v. Graphics Unlimited, Inc.*

(Minn.Ct.App. 1997) 563 N.W.2d 73, 75 ["a subordination agreement is nothing more than a contractual modification of lien priorities and must be construed according to the *expressed intention* of the parties and its terms"].)  The Korman parties agreed to subordinate the promissory note to both the Yukon Senior Debt and the Bell Bank Senior Debt and knew the Yukon Senior Debt, in turn, was subordinate to the Bell Bank Senior Debt.  The Korman parties agreed Yukon and Bell Bank could not only "increase or change the amount of the Senior Debt," but could "extend the time for payment or renew or otherwise alter the terms of any Senior Debt" without giving the Korman parties notice.  Unlike the sellers in *Gluskin* and *Citizens Business Bank,* the Korman parties understood the borrowers (the ULG entities) could enter into new agreements with their senior lenders that increased, or delayed repayment of, the senior debt, and the Korman parties nevertheless agreed to subordinate the promissory note to any existing and future debt the ULG entities might owe to the senior lenders (in all likelihood to obtain the $60 million in cash, plus the ownership interests, they received from ULG as part of the Language Select deal).  The Korman parties cannot now seek to void the subordination agreement because they no longer like a term they agreed to.  (See *Hart v. Bell* (Minn. 1946) 23 N.W.3d 375, 379 ["'the power of courts to declare a contract void for being in contravention of sound public policy is a very delicate and undefined power, and, like the power to declare a statute unconstitutional, should be exercised only in cases free from doubt"]; see also *United Steelworkers of America, Local 6115 v. Quadna Mountain Corp.* (Minn.Ct.App. 1989) 435 N.W.2d 120, 123; *Kelley as Trustee for PCI Liquidating Trust v. Boosalis* (8th Cir. 2020) 974 F.3d 884, 894.)

### 3. *The Undisputed Facts Showed There Was a Senior Default*

As discussed, the trial court did not rule whether there was a Senior Default that would prohibit ULG and Language Select from making interest-only payments on the promissory note. ULG and Language Select argue we should affirm the order granting their motion for summary adjudication on the cause of action for breach of the promissory note because "[t]he undisputed facts show that, at all relevant times, Senior Defaults had occurred and were continuing or would occur as a result of payment of interest on the seller note." We agree that ULG and Language Select met their burden to show there was a Senior Default and that the Korman parties did not meet their burden to raise a triable issue of fact.[11]

As discussed, the lending agreement between the ULG entities and Yukon required the ULG entities to meet certain financial covenants each fiscal quarter and provided that the ULG entities' failure to meet a financial covenant was an Event of Default. The financial covenants included maintaining

---

[11] Section 437c, subdivision (m)(2), provides that, "[b]efore a reviewing court affirms an order granting . . . summary adjudication on a ground not relied upon by the trial court, the reviewing court shall afford the parties an opportunity to present their views on the issue by submitting supplemental briefs." The Korman parties addressed this issue in their opening and reply briefs, as well as in the trial court. Therefore, we can affirm the order granting the motion for summary adjudication on this ground, even though the trial court did not rely on it, because the parties have fully briefed it. (See *Hooked Media Group, Inc. v. Apple Inc.* (2020) 55 Cal.App.5th 323, 336, fn. 1; *Goddard v. Department of Fish & Wildlife* (2015) 243 Cal.App.4th 350, 359, fn. 5; *Bains v. Moores* (2009) 172 Cal.App.4th 445, 471, fn. 39.)

a "consolidated senior funded debt ratio" and a "consolidated total funded debt ratio" below specified maxima and maintaining a "consolidated fixed charge coverage ratio" above a specified minimum. In her declaration, Giovanis explained that during the first quarter of 2019 the ULG entities had a large amount of unpaid collections and liquidity problems, prompting her and other ULG executives to review the ULG entities' financial results and determine the results did not meet the covenants. Giovanis stated the ULG entities continuously failed to meet the "financial covenants necessary to make interest payments on the [promissory note]" during each quarter of 2019 and 2020, and she attached to her declaration compliance certificates prepared by ULG's chief financial officer for each quarter of 2019 and 2020. The compliance certificates attested to the ULG entities' consolidated senior funded debt ratio, consolidated total funded debt ratio, and consolidated fixed charge coverage ratio, and confirmed the ULG entities did not meet the debt and coverage ratios required by their lending agreements with Yukon to make the interest-only payments on the promissory note.

The Korman parties do not meaningfully address the evidence ULG and Language Select submitted showing a Senior Default on the ULG entities' lending agreement with Yukon. The Korman parties simply state, without explanation, ULG and Language Select "relied on conclusory statements and hearsay without providing any facts . . . ." To the extent the Korman parties are arguing the trial court erred in overruling their objections to ULG and Language Select's evidence, they have forfeited the argument by failing to support it with pertinent authority or analysis. (See *Taylor v. Financial Casualty & Surety, Inc.* (2021) 67 Cal.App.5th 966, 980 [on appeal from an order granting summary judgment, "the burden is on the

29

objecting party to renew any relevant [evidentiary] objections by arguing the issue with relevant authority and legal analysis"]; *Ghazarian v. Magellan Health, Inc.* (2020) 53 Cal.App.5th 171, 183 ["overruled objections" to evidence submitted in support of a motion for summary judgment "may be raised on appeal, but the burden is on the objecting party to renew any relevant objection by arguing the issue in its brief; citation to the record alone is insufficient"].)

Nor do we agree the ULG entities' evidence was "conclusory" or otherwise insufficient. The lending agreements between the ULG entities and Yukon explained the financial covenants, and the compliance certificates prepared by ULG's chief financial officer attested to ULG's debt and coverage ratios during each quarter of 2019 and 2020, demonstrating which financial covenants the ULG entities failed to comply with. No more was required for ULG and Language Select to meet their burden on summary adjudication.

The Korman parties also contend, again without explanation, the ULG entities and Yukon "made significant changes to the financial covenants and debt ratios, without [the Korman parties'] knowledge or consent, when compared to the loan agreements from the Language Select Acquisition." While it is true the ULG entities' new lending agreements with Yukon modified the covenants, the modifications do not advance the Korman parties' position. The 2016 lending agreement—the lending agreement in effect when the Korman parties entered the subordination agreement with Yukon—set the maximum consolidated senior funded debt ratio at 2.20 to 1.00 for each quarter in 2019 and 2020 and the maximum consolidated total funded debt ratio at 4.95 to 1.00 or 4.68 to 1.00 (depending on the quarter). The compliance certificates showed the ULG entities'

30

debt ratios in each quarter of 2019 and 2020 exceeded the maximum debt ratios permitted under both the 2016 agreement and the amended agreements.[12]  Under any version of the ULG entities' lending agreements with Yukon, there was a Senior Default.

> D.    *The Trial Court Did Not Err in Granting the Motion for Summary Adjudication on the Korman Parties' Cause of Action for Breach of the Settlement Agreement*

As stated, the Korman parties alleged the ULG parties breached the settlement agreement in two ways:  first, by "allowing and/or causing" ULG and Language Select to default on the promissory note; second, by publicly filing the settlement agreement.

On the first claim, the trial court ruled the ULG parties met their burden to show there was no breach of the settlement agreement because the agreement did not create any "further obligation to make payments" on the promissory note beyond its original terms and because the Korman parties failed to raise a triable issue on whether there was a breach of the promissory note.  The Korman parties argue the ULG parties (including ULG's officers and directors, who were not obligors under the promissory note) "agreed to ensure that the [promissory note] payment obligations would be met," but the Korman parties do not argue or explain how the settlement agreement otherwise changed the terms of the promissory note.  As discussed, the

---

[12]    Indeed, the new lending agreements between Yukon and the ULG entities increased the maximum debt ratio ULG and Language Select had to maintain in order to pay interest on the promissory note.

31

undisputed facts showed there was no breach of the promissory note.  Therefore, even under the Korman parties' theory the ULG officers and directors personally guaranteed the promissory note, there was no breach of the settlement agreement.

The trial court did not address the Korman parties' second claim—that the ULG parties breached the settlement agreement by publicly filing it.  Nevertheless, the ULG parties argue they were entitled to summary adjudication on this claim because they met their burden to show it lacked merit and the Korman parties did not submit evidence to create a triable issue of material fact.  The ULG parties are correct again.[13]

In the trial court the ULG parties argued the Korman parties did not possess and could not reasonably obtain evidence they suffered damages.  The ULG parties submitted one of the Korman parties' interrogatory responses.  The ULG parties asked the Korman parties to "[d]escribe in detail any damages [they] suffered as a result of [the ULG parties'] public filing of the Settlement Agreement."  The Korman parties responded only that they were "seeking damages of at least $5,075,000 [which was the principal and interest due on the promissory note], as well as fees and costs incurred" from the breach.  They did not state any facts showing a connection between the damages they sought and the filing of the settlement agreement.  By showing the Korman parties did not meaningfully respond when asked to describe the damages they suffered from the alleged breach, the

---

[13]     Because the Korman parties addressed this issue in their opening and reply briefs, as well as in the trial court, we can affirm the order granting the motion for summary adjudication on this ground, even though the trial court did not rely on it.  (See *ante*, fn. 11)

ULG parties met their burden to show the Korman parties did not possess and could not reasonably obtain such evidence. (See *Chavez v. Glock, Inc.* (2012) 207 Cal.App.4th 1283, 1302 ["[a] defendant can satisfy its initial burden to show an absence of evidence . . . through discovery responses that are factually devoid"]; *Simmons v. Superior Court* (2016) 7 Cal.App.5th 1113, 1124 [same].)

Therefore, the burden shifted to the Korman parties to create a triable issue of material fact regarding whether and how they suffered damages. By failing to submit any such evidence, the Korman parties did not meet their burden. (See *Villalobos v. City of Santa Maria* (2022) 85 Cal.App.5th 383, 388 [if a defendant meets his or her burden to show the plaintiff cannot establish an element of his or her cause of action, the "plaintiff must present evidence that would allow a reasonable trier of fact to find the underlying material fact more likely than not"]; *Bushling v. Fremont Medical Center* (2004) 117 Cal.App.4th 493, 507 [same].)

> E.  *The Trial Court Did Not Err in Granting the ULG Parties and Language Select's Motion for Summary Adjudication on the Korman Parties' Cause of Action for Declaratory Relief*

The trial court granted the motion for summary adjudication on the cause of action for declaratory relief on the ground there were "no remaining issues" after granting summary adjudication on the other causes of action. The Korman parties contend the trial court erred because "actual controversies exist that affect the parties' future conduct and that require a judicial declaration." The only controversies the Korman parties alleged, however, were whether the promissory note was "in default" and

33

"payable" and whether "ULG's alleged noncompliance with certain quarterly financial covenants contained in its senior debt agreement and ULG's alleged senior defaults" were "valid reasons to avoid making payments under the Seller Note." (See *White v. Smule*, *supra*, 75 Cal.App.5th at p. 354 ["'the burden of a defendant moving for summary judgment only requires that he or she negate the theories of liability as alleged in the complaint'"]; *St. Myers v. Dignity Health* (2019) 44 Cal.App.5th 301, 313 [because "[t]he pleadings delimit the issues to be considered on a motion for summary judgment," a "defendant moving for summary judgment need address only the issues raised by the complaint," internal quotation marks omitted].) Each judicial declaration the Korman parties sought was a variation of a declaration that the ULG entities and Language Select had to repay the principal due on the note, notwithstanding any Senior Default. For the reasons discussed, the ULG entities and Language Select met their burden to show they did not have to make payments on the promissory note, and the Korman parties did not submit evidence to create a triable issue of material fact. The trial court did not err in granting summary adjudication on the declaratory relief cause of action.

## DISPOSITION

The appeal by the Korman parties from the judgment in favor of ULG and Language Select is dismissed. The petition by the Korman parties for writ of mandate directing the trial court to vacate its order granting ULG and Language Select's motion for summary judgment on the Korman parties' complaint is denied. The judgment in favor of United Language Group Holdings, Bergeron, Giovanis, Honour, Offenhauser, Furey, and

34

Haymaker is affirmed.  ULG, Language Select, United Language Group Holdings, Bergeron, Giovanis, Honour, Offenhauser, Furey, and Haymaker are to recover their costs in these proceedings.


                                    SEGAL, J.



        We concur:



                    PERLUSS, P. J.



                    FEUER, J.


35